[No. 14136.  Department One.  November 23, 1917.]

WILLIAM MARTIN *et al.*, *Respondents*, v. J. R. VANSANT *et al.*,
*Appellants.*[1]

ARBITRATION AND AWARD—AGREEMENT TO ARBITRATE—REVOCATION.
An agreement in advance, before a dispute has arisen, to submit to
appraisers the value and price of land held under option to pur-
chase, is not an agreement to submit an existing controversy to
arbitration, and is therefore not subject to revocation by one of the
parties as in arbitration at common law prior to the award; but is
an irrevocable agreement to leave the price to appraisers, upon
which specific performance of the contract may be decreed.

Appeal from a judgment of the superior court for King
county, Mackintosh, J., entered February 17, 1917, in favor
of the plaintiffs, in an action for specific performance, tried
to the court.  Affirmed.

*Charles S. Gleason* and *Peters & Powell*, for appellants.
*John P. Hartman* and *H. A. P. Myers*, for respondents.

WEBSTER, J.—This is an action to specifically enforce the
payment of the sum of $48,750, the alleged purchase price
of six lots in the city of Seattle.  On October 24, 1906,
Melody Choir leased the property to William M. Meacham
for a term of fifty years.  The plaintiffs Martin have suc-
ceeded to Choir's rights as lessor, and defendant to the rights
of Meacham as lessee.  S. Louise Ackerson holds a mortgage
upon the property and joins in the action as a party plaintiff.
The lease grants to the tenant an option to purchase the de-
mised premises at the expiration of ten years from the date of
the lease.  The language granting the option is as follows:

"The said lessor hereby grants to the lessee the privilege of
purchasing the said property at the expiration of ten (10)
years from the date hereof at a value to be determined by ap-
praisal in the following manner: The lessor shall select one
appraiser and the lessee shall select one appraiser; these two

[1]Reported in 168 Pac. 990.

appraisers shall select a third appraiser; the three appraisers so appointed shall appraise the property and the decision of any two of the three appraisers so selected shall be final and binding upon the parties."

On October 17, 1916, the defendant J. R. Vansant gave notice to the plaintiffs that he elected to exercise the option to purchase the property. He notified the plaintiffs that he appointed Fred W. West as one of the appraisers and requested them to appoint another. Thereupon the plaintiffs selected Edward Brady. Later, Mr. West and Mr. Brady met and agreed upon Frank E. Case as the third appraiser. On November 20, 1916, Mr. Brady and Mr. Case joined in a writing fixing the value of the lots at $48,750. After the return of the appraisement, the plaintiffs tendered to the defendants a proper deed of conveyance covering the lots in question and demanded the payment of the purchase price as fixed by the appraisers. The defendants refused to accept the deed or to pay the amount awarded. This action for specific performance was immediately commenced.

The defendants admit that the defendant J. R. Vansant notified the plaintiffs of his election to exercise the option, and also admit the appointment of the appraisers, but deny that an appraisement was made. In addition, they set up the following affirmative defense:

"That immediately after the appraisers Fred W. West, Edward Brady and Frank E. Case had been selected as alleged in the plaintiffs' complaint, they met together for the purpose of making an appraisal of the lands described in plaintiffs' complaint, but the said Edward Brady and Frank E. Case in proceeding to act as such appraisers did not attempt in good faith to fix and determine the true and fair value of said lands, but arbitrarily attempted to fix and determine and to have all of said appraisers fix and determine a valuation of said lands which was and which they each knew to be grossly in excess of the true and fair value of said lands, all with the knowledge of the plaintiff, William Martin. Thereupon these defendants having discovered that the said Edward Brady and the said Frank E. Case were proceeding

as aforesaid, duly revoked all right, power and authority of each and every of said three appraisers to further proceed or act as such appraisers, which said revocation was by notice in writing, duly served upon each of said appraisers. Thereupon the said Fred W. West refused to proceed further with said appraisement, but the said Edward Brady and the said Frank E. Case continued to act in the manner aforesaid and without any power or authority so to do pretended to appraise said lands and arbitrarily to fix the value thereof in the sum of $48,750, which the said Frank E. Case and the said Edward Brady and said plaintiffs well knew to be grossly in excess of the true value of said lands, which value at said time was not to exceed, $27,500."

These affirmative allegations were traversed by reply. Thereafter, in due time, the case came on for trial, at the conclusion of which the court entered judgment as prayed in the complaint. The defendants appeal.

It is first contended that the option clause in the lease amounts to an agreement between the parties to submit the question of the value of the land to arbitration, and consequently that either party had the power to revoke the submission at any time prior to the making of an award. While the ancient rule has been severely criticised by many courts of high authority, it is now too well settled to admit of dispute that, at common law, the power of arbitrators to make a binding award is subject to revocation at any time before an award is made, unless the submission is governed by statute or made a rule of court. In case of revocation, the remedy of the aggrieved party is an action in damages for a breach of the agreement to arbitrate. The reason upon which the rule is based is that parties cannot, by private agreement, oust the courts of the jurisdiction vested in them by law, nor can they irrevocably debar themselves from appealing to the established tribunals of justice. The very decided tendency of modern times, however, is away from the artificial common law doctrine and in the direction of the more intelligent view that arbitration, as an inexpensive, speedy and amicable

method of settling disputes, should receive every encouragement from the courts, so long as it may be extended without contravening sound public policy or settled law. The more recent cases indicate a settled purpose on the part of the courts to confine the strict common law rule of revocation to cases falling clearly within it. Was the arrangement in the lease to have the value of the lots fixed by appraisers an agreement to submit to arbitration? The question seems not to have been passed upon by this court, and its solution calls for a review of cases from other jurisdictions.

In *Collins v. Collins*, 26 Beavan 306, the parties entered into a contract for the purchase and sale of a brewery at a price to be fixed by arbitrators. In deciding the case, it was necessary to determine whether the agreement was one for arbitration. Sir John Romilly, M. R. said:

"An arbitration is a reference to the decision of one or more persons, either with or without an umpire, of some matter or matters in difference between the parties. It is very true that in one sense it must be implied that although there is no existing difference, still that a difference may arise between the parties; yet I think the distinction between an existing difference and one which may arise is a material one, and one which has been properly relied upon in the case. If nothing has been said respecting the price by the vendor and purchaser between themselves, it can hardly be said that there is any difference between them. It might be that, if the purchaser knew the price required by the seller, there would be no difference, and that he would be willing to give it. . . . It may well be that the decision of a particular valuer appointed might fix the price and might be equally satisfactory to both; so that it can hardly be said that there is a difference between them . . . Undoubtedly, if two persons enter into an arrangement for the sale of any particular property, and try to settle the terms, but cannot agree, and after dispute and discussion respecting the price, they say, 'We will refer this question of price to A. B., he shall settle it' and thereupon they agree that the matter shall be referred to his arbitration, that would appear to be an 'arbitration,' in the proper sense of the term. . . . It appears to me that the case of

*Leeds v. Burrows* (12 East. 1) draws the proper and fit distinction between an *arbitration,* in the proper sense of the term, and an appraisement or valuation, for valuation undoubtedly precludes differences, in the proper sense of the term; it prevents differences, and does not settle any which have arisen. That is the distinction which, in my opinion, exists between those cases of appraisement and those cases of arbitration."

In the case of *Leeds v. Burrows,* 12 East 1, referred to in the preceding quotation, Lord Ellenborough said:

"That it was only appointing persons to settle an account of what was due between the parties for the value of the different articles. The parties had no contemplation of submitting any differences to the award of arbitrators, and no such terms ought to be imposed upon them against their own meaning and the meaning of the stamp acts."

*Bos v. Helshaw,* L. R. 2 Exch. 72, was a case where, at a sale at auction, one of the conditions was that, if a mistake was made in the description of any of the property offered for sale, such mistake should not annul the transaction, but that compensation should be made to the aggrieved party, the amount of which to be fixed by two referees, one to be appointed by each of the parties. The court said:

"There is no matter in difference between the parties. This appears clear by noticing what it is which is meant to be referred, namely, the amount of compensation if there was any error. The language of the condition assumes that the parties are in agreement as to there being an error, and the only question remaining would be one of amount."

In *Green and Coates Street Passenger R. Co. v. Moore,* 64 Pa. St. 79, the facts were that the railway company accepted a franchise containing a condition precedent that, before commencing to use the streets, the company should purchase, at the option of the owners, a certain stock of horses, vehicles and harness owned and used upon the streets, at a price to be fixed by three disinterested persons to be chosen for that pur-

pose. In delivering the opinion of the court, Justice Sharswood observed:

"An award is the judgment of a tribunal selected by the parties to determine matters actually in variance between them—not merely to appraise and settle the price of property contracted for under the stipulation that this term of the contract was to be so ascertained. Had the parties made the contract, and afterwards, on a dispute arising, chosen arbitrators to determine what was due upon it, that might have been an award. The case is entirely different where the parties originally agree to buy and sell at a sum to be fixed by an appraisement to be made by a third person or persons."

In *Garr v. Gomez*, 9 Wend. (N. Y.) 649, it was held:

"That there is a distinction between the reference of a collateral or incidental matter of appraisement or calculation, and the submission of matters in controversy for the purpose of a final determination; that the latter, and not the former, is a submission to arbitration."

In *Norton v. Gale*, 95 Ill. 533, 35 Am. Rep. 173, a case where a lease, executed by both parties, fixed the annual rent for the first five years and then provided that the amount to be paid annually for the next five years should be six per cent on the appraised value of the premises, to be ascertained by appraisers, one to be selected by each party and they to select another in case of disagreement, Justice Scholfield, after an exhaustive review of the authorities, held:

"There was, here, no matter in controversy when the leases were executed, or, for that matter, when the appraisers were selected, and the object was to preclude or prevent the arising of differences, and not to settle differences which had arisen"

and concluded that the arrangement did not amount to an arbitration.

In the case of *Palmer v. Clark*, 106 Mass. 373, it is said:

"A reference to a third person to fix by his judgment the price, quantity or quality of material, to make an appraisement of property and the like, especially when such reference is one of the stipulations of a contract founded on other and

good considerations, differs in many respects from an ordinary submission to arbitration. It is not revocable."

In *Memphis Trust Company v. Brown-Ketchum Iron Works*, 166 Fed. 398, 402, the rule of revocation is stated in this language:

"It is the rule that a naked executory agreement (not under authority of a statute or rule of court), made after the arising of a dispute, to submit the same to arbitration, is revocable at will by either party in advance of the actual carrying out of the agreement by arbitration and award thereon."

In *Omaha Water Co. v. Omaha*, 162 Fed. 225, 233, the distinction between an arbitration and a mere appraisal is clearly pointed out in this language:

"It may at once be admitted that, were this an arbitration, the examination of the books in the absence of counsel would have defeated an award. But there is a clear distinction between an appraisement by valuers and an arbitration, though the latter term is frequently but incorrectly applied to both proceedings. An arbitration presupposes a controversy or a difference to be tried and decided, and the arbitrators proceed in a judicial way, sometimes as an adjunct to a court of justice. Their investigation is in the nature of a judicial inquiry, and rules of procedure must be strictly observed or their award will be void. On the other hand, an appraisal or valuation is generally a mere auxiliary feature of a contract of sale, the purpose of which is not to adjudicate a controversy but to avoid one. Thus, if A and B contract, the former to sell, and the latter to buy, certain property at the value thereof as fixed by X., Y., and Z., the latter are appraisers, not arbitrators, and are not governed in their proceedings by the rules relating to arbitration."

In *Parsons v. Ambos*, 121 Ga. 98, 48 S. E. 696, the supreme court of Georgia had before it a case presenting this state of facts: Parsons owned a lot which Ambos desired to secure, and Ambos owned land through which Parsons desired to obtain a right of way for railroad purposes. Being unable to agree as to the value of their respective properties, they en-

tered into a written contract by which it was stipulated that
each was to convey to the other the property desired, and the
excess in value was to be paid for by the party gaining such
excess, at a price to be ascertained by appraisers mutually
appointed.    Subsequently, two appraisers found that the
right of way conveyed by Ambos was worth $600 more
than the property conveyed by Parsons, but the appraise-
ment was set aside because of prejudice and bias on the part
of one of the appraisers.    Thereafter Parsons notified Ambos
in writing that the submission to arbitration was revoked, and
later filed a petition alleging that he had tendered to Ambos
the tract of land conveyed by him and had demanded of him
the land conveyed to him by Parsons, but that Ambos had
refused both the tender and the demand.    He prayed, among
other things, that the submission to arbitration be cancelled
and declared void.    Mr. Justice Lamar, later associate justice
of the supreme court of the United States, delivering the
opinion, said:

"A common law agreement, therefore, to submit the validity
and effect of a contract, or to submit all matters in dispute, to
arbitration, may be revoked by either party at any time be-
fore the award. . . . . Some of the early cases put this
rule upon the ground that a provision whereby the courts may
be ousted of their jurisdiction is repugnant to that other pro-
vision, implied in every contract, that its validity and effect
shall be determined by the courts and the law of the land.
But whether predicated on the idea that the agreement is
repugnant to the contract, or to public policy, the principle is
universally recognized that such general submissions are rev-
ocable.    But this does not mean that nothing can be sub-
mitted, nor that the parties may not stipulate that certain
facts must be determined by those of their own choosing.
For example, in building contracts it is manifest that there
must be some one other than a court or jury to pass on the
question as to whether there has been a compliance with the
specifications as the building proceeds, or to determine
whether the work shall be accepted or rejected as completed.
Hence, there may be a lawful and irrevocable stipulation for
the certificate of the architect or engineer.    In contracts of

insurance the assessment of the amount of damages may be made a condition precedent to a suit by the insured on the policy. So too in contracts of sale, the parties may stipulate for the opinion of an attorney as to the validity of title, or that the value of the property shall be ascertained by appraisers before either has the right to sue. This fixing of values, however, is a mere incident, and not of the substance of the contract. It rather serves the office of evidence, than of a finding which construes the contract or determines rights. The jurisdiction of the courts over these substantial matters may be retained by revocation though the incidental stipulation for a valuation is not revocable by the act of the parties, each of whom is bound to do all that is reasonably in his power to procure the appraisement, and must continue to act until he puts the opposite party in the wrong, or makes it manifest that no suitable person can be obtained to do the service within a reasonable time. *Hood v. Hartshorn,* 100 Mass. 121, 1 Am. Rep. 89. Yet while this stipulation can.not be revoked by the act or fault of a party, it may be revoked by operation of law. . . . ."

In *Flint v. Pearce,* 11 R. I. 576, the parties to a lease agreed that, before the expiration of the term, the rent for an additional period of five years, and also the buildings and improvements on the land, should be appraised by three disinterested persons, one to be chosen by the lessor, one by the lessee, and one by the two so selected, and the award of any two of them concerning the matters referred to them should be conclusive and binding on both parties; that, upon the making of the award, the lessors should either purchase the improvements at the appraised value or renew the lease for five years at the appraised rental. Referees were duly appointed and an award was made by two of them, the one appointed by the lessee refusing to sign. A bill in equity was filed to set aside the award upon the ground, among others, that the submission had been revoked. In passing upon this question, the court said:

"Second, it was claimed that the submission had been revoked. We do not think it necessary on this point to go into the evidence, which is very conflicting, as we do not think the

parties had any right to revoke it.   In cases of agreements
for arbitration the courts formerly leaned strongly against
enforcing them, as tending to oust the courts of their lawful
jurisdiction, but latterly the tendency of decisions has been
more in favor of supporting them, and, fraud and mistake
excepted, there is no sound reason why they should not bind
the parties.   But the present case is much stronger.   There
were no controversies of law or fact between the parties when
this lease was made, but it is a solemn agreement under seal
providing how, after a certain number of years, an appraisal
of buildings shall be made, and giving the lessors the right to
take them at such appraisal; also providing for fixing a rent
for the next five years which the lessors are bound by.   The
parties have further provided for any failure by one party
to nominate an appraiser by giving the right to the other
party, in such case, to nominate two.   We do not consider it
an ordinary arbitration, or that either party has any right
to revoke it."

*California Annual Conference of M. E. Church v. Seitz,*
74 Cal. 287, 15 Pac. 839, involved a case where a contract for
the lease of certain land whereon buildings had been erected
by the lessee provided that, at the expiration of the term, the
lessee might remove the buildings or require the lessor to pur-
chase them at a valuation to be ascertained by appraisers
selected in the usual way.   After reviewing numerous cases,
the court held:

"These cases hold that a contract by which the value of
property or the amount of damage is, for the purpose of the
contract, to be fixed by third persons, is not a submission to
arbitration, and therefore to enforce it does not trench upon
the jurisdiction of the courts  . . . .   The proceeding is a
mere appraisement or valuation, which, although binding
upon the parties, is not the submission of a controversy to ar-
bitration, and is, therefore, not subject to the rules which
govern arbitrators.   And to this effect are the best consid-
ered cases."

In *Toledo S. S. Co. v. Zenith Transp. Co.,* 184 Fed. 391, a
case very similar in principle to the one under consideration,
Hollister, district judge, observed:

"It has been frequently decided that an agreement to submit to the decision of others a question involving only calculation or appraisement or the fixing of values, and the like, or something ministerial in character, does not constitute an arbitration under the strict rules of the common law. The distinction between the submission of such a question and one involving judicial functions is of vital importance, because the latter may be revoked at common law, while the former cannot be."

It is quite true that these adjudications have not gone unquestioned and there are cases to the contrary, but we are convinced that the distinctions made are quite substantial and rest upon sound reasons.

From the foregoing cases, and many others to the same effect, we think it may fairly be deduced that there is a plain distinction between an agreement to submit an existing controversy or matter in difference between parties to the determination of disinterested third persons mutually chosen for that purpose, and conditions in contracts of larger scope whereby the parties agree in advance and before a dispute has arisen to leave to the decision of appraisers or referees the question of value, price, amount of damage, or other incidental particular fact. In the one case, those making the decision are arbitrators; in the other, they are mere appraisers or referees; the determination of a fact which prevents differences from arising instead of settling controversies which already exist is not an award of arbitrators, properly so called, where the fact to be ascertained is a mere incident of a contract and its settlement by third persons serves to assist the court rather than to oust it of its lawful jurisdiction; and while the naked power of arbitrators in the proper sense of the term, under contracts purely executory, may be revoked prior to the making of an award, where the submission is not controlled by statute or made a rule of court, the authority of mere valuers or appraisers, after they have been appointed to fix the value of property which already has been bought and sold under the terms of a contract which stipu-

lates as one of its essential provisions that the purchase price shall be so determined, may not be revoked without cause by either party to the transaction.

Counsel for appellants insist that the power of revocation in arbitration is but an application of the rule that a principal may revoke the authority of his agent. That all authority is, in its nature, revocable. It must be admitted that many cases, particularly the earlier ones, seem to base the right to revoke on this ground, but it seems now to be quite generally accepted that the true basis of the doctrine is the one heretofore stated; viz. that such agreements tend to oust the courts of their jurisdiction, and the power of revocation rests in public policy. Arbitrators are, in no proper sense of the term, agents. They are private, extraordinary judges of a domestic tribunal, selected by the parties themselves to decide existing controversies and disputes submitted to them. They are not subject to the direction and control of either party. They are chosen to act in a quasi-judicial capacity. They are not permitted to obey orders given in advance, but must be free from partiality and bias and do equal and exact justice between the parties. To call an arbitrator an agent is an egregious misnomer, and any attempt to apply to arbitration the rules pertaining to agency is far fetched and impractical.

Again, appellants' counsel say in their brief:

"It may be argued that the election of Vansant to exercise his option and the appointment of appraisers constituted a complete agreement between the parties and that Martin could not be deprived of his right to sell. For the purpose of the argument this may be conceded also. It is doubtless true that the plaintiff Martin, notwithstanding the revocation, could specifically enforce the contract as an agreement to convey, but to avail the plaintiff, the court must go further and hold that the plaintiff had a right to specifically enforce the agreement to submit the question of value to the particular arbitrators that were appointed. Unless the plaintiff would have such right, the defendants had a right to revoke the au-

thority of the appraisers and thereby assume such legal damages or other consequences as might flow therefrom."

This contention begs the question. It is based upon the idea that there is no difference in respect of the right to revoke between cases of arbitration, strictly so called, and cases where one of the terms of a contract of purchase and sale provides that the purchase price of the property is to be ascertained by appraisers or valuers. Assuming that there is such a distinction, the concession made practically concedes the whole case. If the plaintiffs may insist upon the right to enforce the contract as an agreement to convey, but must submit the question of value to the court, clearly the effect would be not to enforce the agreement actually entered into between the parties, but to enforce an entirely new and different contract. If, on the other hand, the plaintiffs are relegated to an action in damages for breach of the agreement to have the value fixed by appraisers, what would be the measure of recovery? Ordinarily the measure of damages for breach of a contract to sell and convey property is the difference between the contract price and the market value of the thing which constitutes the subject-matter of the sale. In other words, that the party not in fault is entitled to the benefit of his bargain. But this contract fails to state the price to be paid. There is no contract price. That term of the contract is to be fixed by appraisers. How is the court to determine what value appraisers chosen by the parties would assess? How could the difference between the price agreed upon and the market value of the property be ascertained? It seems too plain for argument that, under such an agreement, the plaintiffs would be limited to the recovery of nominal damages only, and would be deprived of all substantial benefit arising out of the contract as actually made by the parties. Their remedy at law would be inadequate and, in these circumstances, a court of equity, from the very necessities of the situation and upon elementary principles, should

entertain a bill for specific performance, in order to do full and complete justice between the parties.

The method provided in this lease for ascertaining the value of the demised premises, either for the purposes of sale or as a basis upon which the rental is to be calculated for an additional term, is one frequently resorted to in the business world. Agreements of this character are being entered into almost daily and, in the absence of fraud or mistake, there is neither justice nor common sense in permitting the parties to repudiate them. If appellants' contention is sound, the appraisal feature of a lease is unenforcible and a mere nullity. It would amount to "a mere scrap of paper."

That the rule permitting revocation in cases of this character would place it in the power of those so inclined to take an unjust and unconscionable advantage, is made manifest in the instant case.

Mr. West, one of the appraisers, admitted that he had given Mr. Vansant his opinion as to the value of the lots prior to his selection as an appraiser, and that he reported to Mr. Vansant and his counsel the tentative valuations placed upon the property by his associates at the first meeting held by them. Whereupon Mr. Vansant immediately served the written notice of revocation. His attitude seems to have been that, if the valuation placed upon the property was entirely satisfactory to him, he would allow the matter to proceed, but if the amount agreed upon was unsatisfactory, he would revoke the authority of the appraisers and thus repudiate the lease in this respect. In these circumstances, we quite agree with what was said in *Mitchell v. Newman,* 4 Penn. (Pa.) 443:

"An attempted revocation just as the award is about to be announced, and when there is persuasive evidence that the party had substantial knowledge of the conclusion at which the referees had arrived, is not entitled to much favor. It cannot be asserted except under a clear claim of right."

Again:

"To allow a revocation by one party at such a time, and under such circumstances, instead of accomplishing the objects of an arbitration law, the speedy and final adjustment of the controversies of parties, by a tribunal amicably constituted for that purpose, would make it a mere means of mischief, trickery and fraud." *Commissioners of Montgomery County v. Carey*, 1 Ohio St. 463.

We conclude that the power of arbitrary revocation did not exist.

It is next argued that the right to revoke existed in virtue of the fact that appraisers Brady and Case were acting fraudulently and in bad faith, and further, that the valuation placed upon the property is so grossly excessive as to warrant a court of equity in denying the discretionary relief of specific performance. A perusal of the record fails to disclose any evidence from which unfairness or dishonesty on the part of the appraisers can reasonably be inferred, or that the price fixed is so excessive as to warrant us in holding that the trial court failed to exercise a sound judicial discretion in the premises.

The judgment is affirmed.

ELLIS, C. J., CHADWICK, and MAIN, JJ., concur.