[No. 3092–2.   Division Two.   January 31, 1978.]

ROBERT W. O'BRIEN, *Appellant,* v. FRANK FRANICH,
ET AL, *Defendants,* ANTHONY CHASE, ET AL,
*Respondents.*

*Argal D. Oberquell* and *Oberquell & Ahlf,* for appellant.

*Patrick C. Comfort* and *Valen H. Honeywell,* for respondents.

REED, J.—We are here presented with the second appeal arising out of this 1968 defamation action. In *O'Brien v. Tribune Publishing Co.,* 7 Wn. App. 107, 499 P.2d 24 (1972), hereafter referred to as *O'Brien I,* we remanded the case to the trial court after reversing the granting of a summary judgment. On remand, the trial judge was presented with additional information, and granted another summary judgment in favor of all of the defendants. Plaintiff appeals from the granting of the second summary judgment.

In 1968, plaintiff O'Brien was employed as a district aide by Floyd Hicks, who was at that time a member of the United States House of Representatives. Congressman Hicks and defendant Anthony Chase were engaged in a battle for the incumbent's seat in Congress. The allegedly defamatory statements that are the source of this action are found in a political advertisement that was published in the Tacoma News Tribune, the defendant newspaper, by a group known as "Democrats for Chase" during the course of the campaign. The same advertisement was printed in the Bremerton Sun, a newspaper of general circulation serving Kitsap County. The advertisement reprinted an editorial that had been originally published in another local newspaper; it also contained a letter written by a Mr. and Mrs. Hughes. The "Hughes letter" stated that O'Brien had coerced the Hugheses into displaying pro–Hicks campaign material at their place of business during the 1966 election.

O'Brien responded to this publicity by initiating lawsuits in Pierce and Kitsap Counties;[1] this appeal arises out of the Pierce County action. In each case, O'Brien contended that the advertisement defamed him in four respects: (1) it

---

[1] In the Pierce County case, the Tacoma News Tribune was the publisher defendant, while in Kitsap County, the Bremerton Sun was named; the issues in both cases were identical.

stated that plaintiff at one time received a part–time salary as Hicks' aide while engaged in other part–time employment and later received a full–time salary as a Congressional assistant while engaging only in campaign work; (2) it referred to two lawsuits pending against him in which he was charged with falsely representing himself to be an attorney; (3) it mentioned that O'Brien had sought a continuance in the lawsuits—O'Brien argues that this implied that he had exerted undue influence on the trial judge; and (4) it reprinted the Hughes letter which contained allegations of unethical and improper conduct.

The Pierce County action was tried first. On October 13, 1970, the trial judge, on motion of the defendants, granted a summary judgment. He held that O'Brien was a public figure and had failed to introduce sufficient evidence of actual malice on the part of the defendants to overcome their motion. In *O'Brien* I, we affirmed the granting of the summary judgment on the first three allegations of defamation; however, we relied on grounds different from those considered controlling by the trial judge. Our analysis led us to conclude that two of the statements were not defamatory (the "salary" and "continuance" issues), and that the comments concerning the pending lawsuits were within the conditional privilege to report official proceedings. We remanded for a determination on the question of whether the "Hughes letter"—the fourth issue—was published with actual malice.[2] Although we did not directly address the issue, we inferentially affirmed Judge Johnsen's ruling that Robert O'Brien was a "public figure" and therefore unable to recover damages for defamation without a showing that the defendants acted with "knowledge that it [the statement] was false or with reckless disregard of whether it was

[2]In addition, we affirmed the granting of a summary judgment on all issues as to two of the defendants. Even after drawing all inferences in the light most favorable to the plaintiff (nonmoving party), we found no clear and convincing evidence of actual malice on the part of defendants Franich and Puyallup Publishing Company. *O'Brien v. Tribune Publishing Co.,* 7 Wn. App. 107, 124, 499 P.2d 24 (1972). *See also St. Amant v. Thompson,* 390 U.S. 727, 20 L. Ed. 2d 262, 88 S. Ct. 1323 (1968).

false or not." *New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 11 L. Ed. 2d 686, 84 S. Ct. 710, 95 A.L.R.2d 1412 (1964). *See also Curtis Publishing Co. v. Butts* and *Associated Press v. Walker,* 388 U.S. 130, 18 L. Ed. 2d 1094, 87 S. Ct. 1975 (1967) (actual malice requirement extended to public figures).

Apparently the Kitsap County action was stayed pending the outcome of the Pierce County appeal. It was tried in December of 1972. Because of our decision in *O'Brien* I, the trial judge in Kitsap county granted a partial summary judgment in favor of the defendants, limiting the case to questions arising out of the publication of the Hughes letter. The case was tried to a jury; in response to a special interrogatory, the jury found that the allegations in the Hughes letter were substantially true. Judgment was entered for the defendants.

The Pierce County lawsuit came up for trial in October 1976. Defendants again moved for a summary judgment. They argued that our opinion in *O'Brien* I was the "law of the case" for the first three issues, and that the plaintiff was collaterally estopped by the judgment and special interrogatory returned in the Kitsap County case from retrying the fourth issue. The trial judge agreed and granted summary judgments in favor of all defendants.

On appeal, O'Brien contends that the law of the case rule does not control the resolution of the first three issues. He also argues that applying the doctrine of collateral estoppel to bar him from relitigating the Hughes letter questions results in serious injustice, and is, therefore, inappropriate.

RAP 2.5(c) restricts the law of the case doctrine. Subsection (2) states:

> The appellate court may at the instance of a party review the propriety of an earlier decision of the appellate court in the same case and, where justice would best be served, decide the case on the basis of the appellate court's opinion of the law at the time of the later review.

■ Although O'Brien is correct in asserting that the scope of the actual malice requirement has been restricted

by case law developments since our ruling in *O'Brien* I, the change in the law is not relevant to our analysis of the first three issues.[3] As previously stated, in *O'Brien* I we held that two of the challenged statements were simply not defamatory. Neither the allegations concerning the plaintiff's salary nor the mention of the continuance are of such a nature as to have exposed the plaintiff to

> hatred, contempt, ridicule or obloquy or to [have] deprive[d] him of the benefit of public confidence or social intercourse or to injure him in his business or occupation, . . .

*Spangler v. Glover,* 50 Wn.2d 473, 478, 313 P.2d 354 (1957). The definition of defamation has not changed since our first opinion and we see no reason for not applying the law of the case doctrine and eliminating further litigation concerning the "salary" and "continuance" issues.

■ The *Rosenbloom–Gertz* line of cases is as equally inapplicable to the third issue, which arose out of the publication of information concerning the two lawsuits. *Rosenbloom v. Metromedia, Inc.,* 403 U.S. 29, 29 L. Ed. 2d 296, 91 S. Ct. 1811 (1971); *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (1974). As we stated in *O'Brien v. Tribune Publishing Co.,* 7 Wn. App. 107, 499 P.2d 24 (1972), at page 117:

> A newspaper has a qualified or conditional privilege to report legal proceedings provided the publication is a fair and accurate statement of the contents and is made without malice.

---

[3] In 1972, we were guided by the United States Supreme Court decision in *Rosenbloom v. Metromedia, Inc.,* 403 U.S. 29, 29 L. Ed. 2d 296, 91 S. Ct. 1811 (1971), and the State Supreme Court opinion in *Miller v. Argus Publishing Co.,* 79 Wn.2d 816, 490 P.2d 101 (1971). *Rosenbloom* and *Miller* stated that the First Amendment protections of *New York Times Co. v. Sullivan,* 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710 (1964) embraced matters of public or general interest, regardless of the personal status of the plaintiff. The case of *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (1974), curtailed this trend and once again established that only those individuals who have achieved stature as public persons are constitutionally required to prove actual malice in order to recover any damages for defamation. *See also Taskett v. KING Broadcasting Co.,* 86 Wn.2d 439, 546 P.2d 81 (1976).

Recent cases have constitutionalized this common–law privilege to report legal proceedings, and in fact, we note there is some indication that an *accurate* report of the proceedings may be protected by an unconditional privilege. *Time, Inc. v. Firestone*, 424 U.S. 448, 47 L. Ed. 2d 154, 96 S. Ct. 958 (1976); *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 43 L. Ed. 2d 328, 95 S. Ct. 1029 (1975). *See also* Restatement (Second) of Torts § 611, comment *b* (1977). The *Gertz* restriction of the actual malice requirement is not relevant to the privilege to report legal proceedings.

Having determined that the legal principles controlling the disposition of the first three issues have not changed since our decision in 1972, we hold that the trial judge was correct in applying the law of the case doctrine and granting a summary judgment as to those issues.

■ Although O'Brien argues he is neither a public official nor a public figure and, therefore, should not have been required to prove actual malice in order to recover damages for the defamatory statements made in the Hughes letter, we find it unnecessary to reach that issue. The jury in the Kitsap County case found that the charges in the letter were substantially true; in this state, truth is a defense to a defamation action regardless of the status of the plaintiff. *Jolly v. Fossum*, 59 Wn.2d 20, 24, 365 P.2d 780 (1961). The only question remaining is whether, under the circumstances of this case, the trial judge was correct in applying the doctrine of collateral estoppel.

■ Collateral estoppel will be applied when four conditions are fulfilled: (1) the issue decided in the prior adjudication must be identical to the issue presently before the court; (2) the prior judgment must have been final and on the merits; (3) the party against whom the plea is now being asserted must have been a party, or in privity with a party to the prior adjudication; (4) the application of the doctrine must not work an injustice. *Lucas v. Velikanje*, 2 Wn. App. 888, 471 P.2d 103 (1970); *Bernhard v. Bank of America Nat'l Trust & Sav. Ass'n*, 19 Cal. 2d 807, 122 P.2d 892 (1942). The requirements are all met here. The plaintiff

had an opportunity to present his theory of the case to the jury in the Kitsap County lawsuit; our review of the record discloses no reason why Mr. O'Brien should not be bound by their finding.

We hereby affirm the trial judge's order granting the summary judgment.

PEARSON, C.J., and PETRIE, J., concur.

Reconsideration denied March 1, 1978.