[No. 2969-2. Division Two. February 5, 1979.]

AVON DUNLAP, ET AL, *Appellants*, v. HUGH E. WILD, ET AL, *Respondents*.

584

*Douglas V. Alling*, for appellants.

*James J. Mason*, for respondents.

PEARSON, C.J.—The basic issue in this appeal is whether a purchaser of securities who is unhappy with an arbitration award he won against a stock brokerage firm is precluded by collateral estoppel from raising the same issues in a suit against the firm's salesman. We hold that he is, thereby affirming the trial court's dismissal of the purchaser's cause of action.

The essential facts are not in dispute. On October 10, 1973, Avon Dunlap purchased 62 Fidelity Mortgage convertible bonds through Hugh Wild, a broker for Dean Witter and Company. Two weeks later Dunlap converted 22 bonds to Fidelity Mortgage stock. When Dunlap received his November statement from Dean Witter, he noticed that he had not been credited with interest for the 2-week period he held the 22 bonds. He wrote a letter to Dean Witter claiming that Wild had told him that he would receive interest on the bonds at the time of conversion.

Dunlap stated he considered this a misrepresentation and asked that the entire sale be rescinded. He also stated that he would sue under the civil liability section of the Washington securities act, RCW 21.20.430, if Dean Witter did not rescind the sale and return his investment plus interest. Meanwhile, the value of the stock dropped dramatically.

Dean Witter refused to rescind the sale, but offered to credit Dunlap's account for the interest not received on 22 bonds held for 2 weeks. They also called attention to an arbitration clause in the customer agreement signed by Dunlap. The arbitration clause stated that "any controversy . . . arising out of or relating to this contract or the breach thereof, shall be settled by arbitration." Dunlap agreed to arbitration and received an arbiter's award on December 4, 1974, of $739.08, plus attorney's fees of $3,500 and arbitration costs. The arbiter's opinion stated:

I find that the misrepresentation made by Mr. Wild was a negligent misrepresentation regarding an ancillary matter connected with the purchase of the bonds. Although [Mr. Dunlap] was concerned about the interest in the event of conversion, his primary investment concern was the substance of the Company and his ability to convert the bonds into stock. As a result, I do not feel that the misrepresentation as to the amount of interest was material enough to the total nature of the transaction as to allow rescission.

Dunlap accepted payment of the arbiter's award, but was still disappointed in the result. He filed a complaint in superior court nearly 2 years later against Wild. The complaint, entitled "Complaint for Negligent Misrepresentation," stated two causes of action: (1) negligent misrepresentation, and (2) violation of Washington securities act, RCW 21.20.430.

Wild moved for summary judgment on the ground that the arbitration award has res judicata effect, thereby precluding a suit against him. CR 12(c); CR 56. Dunlap resisted the summary judgment motion contending that neither res judicata nor collateral estoppel was applicable

because there was no identity of parties or causes of action. The trial court rejected Dunlap's arguments and granted summary judgment dismissing his cause of action.

Dunlap's first contention on appeal is that the arbitration award in this case does not have res judicata or collateral estoppel effect because it is based on an agreement to arbitrate which is void.[1] Dunlap points out that the Washington securities act, RCW 21.20.430, states in subsection 5:

Any condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this chapter or any rule or order hereunder is void.

The question is whether this section of the securities act overrides the wide authority to arbitrate granted to contracting parties by the 1943 Washington arbitration act, codified at RCW 7.04.

Two or more parties may agree in writing to submit to arbitration, in conformity with the provisions of this chapter, *any controversy* which may be the subject of an action existing between them at the time of the agreement to submit, or they may include in a written agreement a provision to settle by arbitration any controversy thereafter arising between them out of or in relation to such agreement. Such agreement shall be valid, enforceable and irrevocable save upon such grounds as exist in law or equity for the revocation of any agreement.

RCW 7.04.010. (Italics ours.) *See also* 22 Wash. L. Rev. 117 (1947).

It is true that, under common law, courts were often hesitant to sanction agreements to arbitrate future disputes because they viewed them as usurping the authority and power of the judiciary. *See State ex rel. Fancher v. Everett,* 144 Wash. 592, 258 P. 486 (1927). However, since 1860 the

---

[1]Wild contends that we should apply New York law in analyzing the validity of the arbitration agreement. However, he offers no citation to the record where New York law was pleaded or proved in the arbitration hearing nor does he explain in his brief how the application of New York law would affect our interpretation of the nonwaiver section of the Washington securities act, RCW 21.20.430(5). Therefore, we decline to consider his argument further. *See generally Seattle School Dist. 1 v. State,* 90 Wn.2d 476, 488, 585 P.2d 71 (1978).

Washington legislature has endorsed the use of arbitration procedures as a substitute for court trials and allowed for judicial enforcement of the awards resulting therefrom. *See* Act Relating to Arbitrations, Laws of 1860, at 323; Civil Practice Act, Laws of 1873, ch. 20, §§ 264–74, pp. 67–70; Code of 1881, §§ 264–74. As early as 1917, our Supreme Court stated that arbitration was to be encouraged as a matter of public policy.

> The very decided tendency of modern times, however, is away from the artificial common law doctrine and in the direction of the more intelligent view that arbitration, as an inexpensive, speedy and amicable method of settling disputes, should receive every encouragement from the courts, so long as it may be extended without contravening sound public policy or settled law.

*Martin v. Vansant,* 99 Wash. 106, 108–09, 168 P. 990 (1917). *See generally Dickie Mfg. Co. v. Sound Constr. & Eng'r Co.,* 92 Wash. 316, 159 P. 129 (1916).

▮ Given the long–standing encouragement of arbitration by our legislature and judiciary as well as the sweeping language of RCW 7.04.010, we doubt our Supreme Court would hold that the nonwaiver section of the Washington securities act, RCW 21.20.430(5), renders invalid agreements to arbitrate future causes of action arising thereunder. *But cf. Wilko v. Swan,* 346 U.S. 427, 98 L. Ed. 168, 74 S. Ct. 182 (1953) (the United States Supreme Court interpreting the 1925 Federal Arbitration Act and the 1933 Federal Securities Act, both of which contained language nearly identical to RCW 7.04.010 and RCW 21.20.430(5), found arbitration agreements regarding future causes of action arising under the 1933 Securities Act void). However, we need not decide that question in this appeal because Dunlap's consent to the arbitration proceedings and acceptance of the award estop him from challenging their validity. *Trollope v. Jeffries,* 55 Cal. App. 3d 816, 128 Cal. Rptr. 115 (1976). *See generally Svatonsky v. Svatonsky,* 63 Wn.2d 902, 389 P.2d 663 (1964); *Keith Adams & Assoc., Inc. v. Edwards,* 3 Wn. App. 623, 477 P.2d 36 (1970). *See*

*also Gardner v. Shearson, Hammill & Co.*, 433 F.2d 367 (5th Cir. 1970); *Moran v. Paine, Webber, Jackson & Curtis*, 389 F.2d 242 (3d Cir. 1968). By voluntarily consenting to arbitrate an existing dispute, Dunlap removed from controversy the validity of the contractual agreement to arbitrate future disputes.

We now proceed to the central issue: Is this particular arbitration award res judicata or is the doctrine of collateral estoppel applicable as a bar to this action?

> Res judicata and collateral estoppel, kindred doctrines designed to prevent relitigation of already determined causes and curtail multiplicity of actions and harassment in the courts, are at times indistinguishable and frequently interchangeable. If the differences must be noted, it could be said that res judicata is the more comprehensive doctrine, identifying a prior judgment arising out of the same cause of action between the same parties, whereas a collateral estoppel relates to and bars relitigation on a particular-issue or determinative fact.

*Bordeaux v. Ingersoll Rand Co.*, 71 Wn.2d 392, 395–96, 429 P.2d 207 (1967).

In order for res judicata to apply there must be identity of the parties to the current adjudication with those in the prior adjudication. *Northern Pac. Ry. v. Snohomish County*, 101 Wash. 686, 172 P. 878 (1918), *quoted in Bordeaux v. Ingersoll Rand Co., supra.* Wild was a key witness in the arbitration proceeding, but he was never made a party to it nor is he in privity with a prior party. Therefore, he cannot claim that the arbitration proceeding is res judicata to the present suit.

Traditionally, the lack of identity of parties would also prevent the application of collateral estoppel. *See, e.g., Bordeaux v. Ingersoll Rand Co., supra* at 396 (rule based on "mutuality" doctrine). However, this requirement has been considered abandoned ever since our Supreme Court stated in *Henderson v. Bardahl Int'l Corp.*, 72 Wn.2d 109, 116, 431 P.2d 961 (1967), that

> there are many cases where the issues of mutuality, privity, and the offensive–defensive distinction should not be

permitted to obstruct the application of collateral estoppel by judgment.

*See Kyreacos v. Smith*, 89 Wn.2d 425, 428, 572 P.2d 723 (1977); *Lange v. Heglund*, 391 F. Supp. 128 (W.D. Wash. 1974); *Gibson v. Northern Pac. Beneficial Ass'n Hosps., Inc.*, 3 Wn. App. 214, 218, 473 P.2d 440 (1970); Recent Developments, *Collateral Estoppel—Demise of Mutuality in Washington?*, 44 Wash. L. Rev. 449 (1969); 2 L. Orland, Wash. Prac. § 373(6) (3d ed. 1972). *But see Disch v. Raven Transfer & Storage Co.*, 17 Wn. App. 73, 75, 561 P.2d 1097 (1977).

■ Although the new limits of collateral estoppel have not been fully explored by Washington appellate courts, one principle is clear: a nonparty to prior adjudication may invoke collateral estoppel defensively against a party to the earlier action. *See Kyreacos v. Smith, supra; Bergh v. State*, 21 Wn. App. 393, 585 P.2d 805 (1978); *Simpson Timber Co. v. Aetna Cas. & Sur. Co.*, 19 Wn. App. 535, 576 P.2d 437 (1978); *Sample v. Chapman*, 7 Wn. App. 129, 497 P.2d 1334 (1972). *See also Nickert v. Puget Sound Tug & Barge Co.*, 335 F. Supp. 1162 (W.D. Wash. 1971). *Cf. Lange v. Heglund*, 391 F. Supp. 128 (W.D. Wash. 1974) (permits nonparty to use collateral estoppel offensively against a party to the prior suit).[2] This is precisely the posture of this case. Consequently, we hold that Wild is entitled to assert the defense of collateral estoppel. *Cf. Berman v. Dean Witter & Co.*, 44 Cal. App. 3d 999, 119 Cal. Rptr. 130 (1975) (plaintiff's suit following arbitration barred under similar facts, involving identical customer agreement to the one present in this case).

---

[2]Even if the requirement of identity of both parties had not been abolished, the old rule clearly had exceptions for principal–agent and master–servant. 2 L. Orland, Wash. Prac. § 373(6) n.57 (3d ed. 1972). Thus, where plaintiff lost a suit against a seller–principal for rescission of a real estate contract on grounds of misrepresentation, he was barred from bringing a second suit against the seller's agent, the real estate broker. *W.G. Platts, Inc. v. Wendt*, 70 Wn.2d 561, 424 P.2d 629 (1967). *See also Marshall v. Estate of Chapman*, 31 Wn.2d 137, 195 P.2d 656 (1948); *Plott v. York*, 33 Cal. App. 2d 460, 91 P.2d 924 (1939); 50 C.J.S. *Judgments* § 760(c) (1947).

The modern requirements for application of the doctrine of collateral estoppel are: (1) the issue decided in the prior adjudication must be identical with one presented in the action in question; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party *against* whom the plea of collateral estoppel is asserted must have been a party or in privity with a party to the prior litigation; and (4) application of the doctrine must not work an injustice. *Lucas v. Velikanje,* 2 Wn. App. 888, 894, 471 P.2d 103 (1970). *See Bergh v. State, supra; Simpson Timber Co. v. Aetna Cas. & Sur. Co., supra; O'Brien v. Franich,* 19 Wn. App. 189, 575 P.2d 258 (1978).[3]

We hold that all four requirements have been met in this case. As conceded by Dunlap in his brief, the factual issue before the Superior Court was whether there had been a material misrepresentation.[4] Clearly, this issue was resolved by the arbiter, as the portion of his opinion quoted

---

[3]For a discussion of the use of collateral estoppel against nonparties see 87 Harv. L. Rev. 1485 (1974).

[4]As noted above, Dunlap's complaint stated two theories: (1) negligent misrepresentation, and (2) liability under Washington securities act, RCW 21.20.430(1), (3). At the time of the lawsuit, RCW 21.20.430(1) stated in pertinent part:

"Any person, who offers or sells a security in violation of any provisions of RCW 21.20.140 through 21.20.220 and 21.20.230, *or offers or sells a security by means of fraud or misrepresentation* is liable to the person buying the security from him . . ." (Italics ours.)

As can be seen from the italicized language, Wild's liability under the Washington securities act was premised on "fraud or misrepresentation." Our court has stated that "fraud or misrepresentation" under that statute is defined by the common law. *Ludwig v. Mutual Real Estate Investors,* 18 Wn. App. 33, 567 P.2d 658 (1977). At common law, a misrepresentation had to be material in order to be actionable. *Ludwig v. Mutual Real Estate Investors, supra.* Thus, materiality of the misrepresentation was at issue whether Dunlap elected the common-law remedy or the Washington securities act remedy in his complaint.

Without commenting on whether the concept of "materiality" is still part of RCW 21.20.430(1), we simply note that the legislature has subsequently deleted the language italicized above and substituted the words "RCW 21.20.010 or." Laws of 1977, 1st Ex. Sess., ch. 172, § 4. *See* Comment, *Securities Fraud Under the Blue Sky of Washington,* 53 Wash. L. Rev. 279, 289-90 (1978); Rooks, *The Blue Sky of Washington: Registration of Securities of a New Venture,* 6 Gonz. L. Rev. 187 (1971).

above shows. No challenge has been made to the arbitration award as a final judgment on the merits. *See Albin Stevedore Co. v. Central Rigging & Contracting Corp.*, 308 F.2d 347 (9th Cir. 1962); *Taylor v. Basye*, 119 Wash. 263, 205 P. 16 (1922); *Trollope v. Jeffries*, 55 Cal. App. 3d 816, 128 Cal. Rptr. 115 (1976); *Rembrandt Indus., Inc. v. Hodges Int'l, Inc.*, 38 N.Y.2d 502, 344 N.E.2d 383, 381 N.Y.S.2d 451 (1976). *But see Fisher Flouring Mills Co. v. United States*, 17 F.2d 232, 235 (9th Cir. 1927).

Dunlap was a party to the arbitration and he had a full and fair opportunity to completely explore the issue of the materiality of the misrepresentation. In fact, the record shows he concentrated a large portion of his argument and evidence in that direction. Therefore, there is no injustice in preventing him from relitigating the issue.

The judgment of the trial court is affirmed.

REED and SOULE, JJ., concur.