[No. 1524-1. Division One—Panel 2. May 7, 1973.]

EDWIN H. LOGER, *Appellant,* v. WASHINGTON TIMBER
PRODUCTS, INC., *et al., Respondents.*

*Phillipps & Young* and *Kenneth E. Phillipps,* for appellant.

*Slade Gorton, Attorney General, Angelo R. Petruss, Assistant, Lenihan, Ivers, Jensen & McAteer,* and *Carl P. Jensen,* for respondents.

CALLOW, J.—The parties to this action are Edwin H. Loger, an injured workman; the State of Washington; and Publishers Forest Products, Inc., the employer. The appeal is from the order of the trial court dismissing the workman's complaint against the state. The issues raised are whether (a) the court erred in considering the interrogatories, depositions and admissions on file in ruling upon the motion of the state to dismiss the action, and (b) whether the state is liable for a workman's personal injury if the injury is proximately caused by a failure of the safety division of the Department of Labor and Industries to perform safety inspections, enforce safety standards, or notify an employer of a working condition which is in violation of safety standards.

On December 31, 1970, Edwin Loger was employed at a sawmill owned and operated by Publishers Forest Products, Inc., in Snohomish County. In performing his duties, his left hand was injured when it came in contact with a saw. His claim is that the machinery was in an unreasonably dangerous defective condition because of the lack of any guard or hood, contrary to safety standards set forth in RCW 49.20.010 and the Washington Administrative Code 296-78-300, 296-78-315, and 296-78-330. His complaint recites that the state was negligent in that the Department of

Labor and Industries failed to inspect the sawmill, where the plaintiff was employed in the year prior to his injury, as required by RCW 49.16.120, 49.20.040, 43.22.050(1); failed to discover the unsafe and dangerous condition of the saw which had existed for many years; and failed to enforce the safety standards of the Department of Labor and Industries concerning sawmills contrary to the provisions of RCW 49.16.120, 49.20.040 and 43.22.050(1). The complaint further alleges failure of the department to investigate like injuries to workmen in order to prevent other injuries contrary to RCW 49.16.120 and that these failures permitted unsafe working conditions which caused the injury to the workman.

The trial court recited that it considered the answers to the interrogatories, depositions and admissions on file in ruling on the motion by the state to dismiss the action following the opening statement of the plaintiff. The plaintiff claims that the trial court treated the motion for dismissal as a motion for summary judgment when it considered matters outside the pleadings on the motion to dismiss; and, therefore, it should have been incumbent upon the defendant to comply with the requirements of CR 56.

When a motion to dismiss for failure to state a claim upon which relief may be granted is made at the conclusion of a plaintiff's opening statement, the trial court may grant the motion only if it is clear beyond doubt that no set of facts could be proven that would entitle the plaintiff to relief upon the claim. *Higgins v. State,* 70 Wn.2d 323, 422 P.2d 836 (1967); *Sherwood v. Moxee School Dist.,* 58 Wn.2d 351, 363 P.2d 138 (1961). In *Halvorson v. Birchfield Boiler, Inc.,* 76 Wn.2d 759, 458 P.2d. 897 (1969), we find at page 760:

> A motion to dismiss based on the failure of the complaint and the opening statement to state a claim upon which relief can be granted, can be granted only where it is clear beyond doubt from reading the complaint, hearing the opening statement, and considering offers of proof that plaintiffs cannot prove facts which would entitle them to relief. *See Hofto v. Blumer,* 74 Wn.2d 321, 444

P.2d 657 (1968). Accordingly, we must accept each of plaintiffs' allegations, claims and offers of proof as verities for the purpose of viewing the correctness of the trial court's ruling of dismissal.

A party moving for judgment on the pleadings admits, for the purposes of the motion, all facts well pleaded. *Hodgson v. Bicknell,* 49 Wn.2d 130, 298 P.2d 844 (1956). The motion will be denied if there are any issues of fact. *Mayflower Air-Conditioners, Inc. v. West Coast Heating Supply, Inc.,* 54 Wn.2d 211, 339 P.2d 89 (1959).

■ When a motion is made at the completion of the plaintiff's opening statement claiming the absence of any basis upon which relief could be granted, the motion may be considered under CR 12(c) without treating it as a motion for summary judgment under CR 56 if the court can say that no matter what facts are proven within the context of the claim, the plaintiffs would not be entitled to relief. In such a situation, the presentation of evidence, whatever it might be, would be immaterial. No purpose would exist for treating the motion for judgment on the pleadings as one for summary judgment and granting an opportunity to present factual evidence pertinent under CR 56 if whatever might be proven would be immaterial. If factual evidence in addition to the pleadings was considered and was material to the disposition of the motion for judgment on the pleadings, then the consideration of those matters would convert the motion for judgment on the pleadings into a motion for summary judgment. However, when the content of the interrogatories, depositions and admissions would make no difference to the disposition of the motion, whether considered by the trial court or not, then there is no need to convert the motion under CR 12(b)(6) or CR 12(c) into a motion for summary judgment in order to grant the nonmoving party an opportunity to controvert evidence submitted outside the pleadings. The nonmoving party plaintiff could not be affected by any element of surprise if there could not exist a state of facts which he could prove to entitle him to relief under his claim.

*See also Gold Seal Chinchillas, Inc. v. State,* 69 Wn.2d 828, 420 P.2d 698 (1966).

In *Stevens v. Murphy,* 69 Wn.2d 939, 421 P.2d 668 (1966), a motion to dismiss was considered as a motion for summary judgment since affidavits and depositions were considered. The problem of CR 12(c) was encountered which reads:

> (c) Motion for Judgment on the Pleadings. After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

The trial court determined there was no material issue of fact and ruled as a matter of law. It was said at page 944:

> All of the pertinent material considered by the court upon the issue of parental immunity was placed before the court at the *invitation* of all parties to the lawsuit. No error is assigned to the procedure followed by the court in its consideration of this material, which consisted of undenied pleading allegations, an affidavit, a deposition and uncontroverted statements contained in a memorandum submitted upon the motion. Nor do the parties before this court dispute the truth of any fact contained in the material upon which the trial judge based his ruling.

The court held that the parties had reasonable and full opportunity to present material which might bear on the issue; and, therefore, the "reasonable opportunity" requirement of CR 12(c) was satisfied. In this case, no objection was made to the consideration of the extraneous evidence by the trial court at the time of the argument on the motion. He was allowed to consider the facts alleged in plaintiff's opening statement as well as the facts alleged in the complaint as true and rule on the motion. Possible factual issues presented by the pleadings and opening state-

ment of the plaintiff are never reached if the defendant is entitled to judgment as a matter of law. The trial court therefore, in this case, could consider the interrogatories, deposition and affidavits to enable him to understand the purport of the defendant's motion and rule on the motion presented without reaching or resolving any factual issue whatsoever. There being no factual dispute and the state having admitted the facts alleged in the plaintiff's complaint, the question presented was one of law entirely. Compliance with the formalities of CR 56 was not necessary. *Kotarski v. Aetna Cas. & Sur. Co.*, 244 F. Supp. 547 (E.D. Mich. 1965). *See also* 3A L. Orland, Wash. Prac., Author's Comments pp. 10-25 (2d ed. 1968).

We turn to whether the state can be responsible for an injury, a proximate cause of which is a failure of the department to perform its safety enforcement functions. When RCW Title 51 (commonly referred to as the workmen's compensation act or industrial insurance act) was enacted, its purpose was set forth in RCW 51.04.010 which withdrew

all phases of the premises . . . from private controversy . . . to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this title; and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished, except as in this title provided.

This expression of legislative intent was commented upon in *Koreski v. Seattle Hardware Co.*, 17 Wn.2d 421, 135 P.2d 860 (1943), as follows at page 427:

In other words, all phases of the premises are withdrawn from private controversy, except as otherwise provided in the workmen's compensation act; and to that end all civil causes of action for personal injuries sustained in an industrial accident arising out of extrahazardous employment, except, we repeat, in those cases where the workmen's compensation act expressly preserves or creates a right of action, and all jurisdiction of courts of this state of such causes of action, are abolished.

Continuing, the *Koreski* opinion states at page 428:

> [T]he workmen's compensation act affords a right of action to certain workmen for personal injuries sustained under certain circumstances and withholds the right of action from him in other situations, *depending upon the status of the person whose negligence causes the injury.*

The format for recovery was further delineated in *Boeing Aircraft Co. v. Department of Labor & Indus.*, 22 Wn.2d 423, 156 P.2d 640 (1945), where the court observed at page 428:

> [T]he purpose of the act was to furnish a remedy which would reach every injury sustained by a workman engaged in any of such industries and make a sure and certain award therefor, bearing a full proportion to the loss sustained, regardless of the manner in which the injury was received.

The *Boeing* opinion cited with approval *Stertz v. Industrial Ins. Comm'n*, 91 Wash. 588, 158 P. 256 (1916), which emphasized that the workmen's compensation act of our state was based on the concept of liability imposed on the employer, regardless of fault, with the purpose of establishing a sure and certain relief for workmen. The opinion reaffirmed that by the act, all common-law forms of action which might arise by reason of an injury to an employee while in the scope of his employment in extrahazardous industry were abolished except for such certain statutory causes of action as were specifically created by the workmen's compensation statute. The act, therefore, is all conclusive with no right to proceed outside of its bounds unless the statute specifically bestows such a right.

The right to proceed against another not in the same employ is set forth in RCW 51.24 which grants an election to take under the title or seek a remedy against the negligent third party. If the workman elects to proceed against a negligent third party, the department is subrogated to the rights of the workman against such third party recovery, to the extent of compensation payments made under Title 51.

■ The state is not expressly designated as a third party against which a right of action has been created. As

noted in the *Koreski* opinion, a right of action is afforded under the act depending upon the "status of the person whose negligence causes the injury." While the state may be a person (RCW 1.16.080), the legislature has never indicated that the state had a status that made it susceptible to suit by an injured workman. The functions of the state, for the decades that the act has existed, have been enumerated by statute. The legislature has imposed the duty of making safety inspections upon the Department of Labor and Industries but has not set forth any sanctions in the event the duty is not performed. This absence of consequences in the event of nonperformance cannot be deemed to be an oversight on the part of the legislature but must be looked upon as a result contemplated and intended. The statute is plain —it states that all civil causes of actions for personal injuries are abolished except as provided in Title 51. A civil cause of action against the state for negligence in the performance of safety inspections has not been provided in that title.

██ We turn to an analysis of RCW 4.92.090 in which the legislature abolished the doctrine of sovereign immunity from tort liability. *See Hosea v. Seattle,* 64 Wn.2d 678, 393 P.2d 967 (1964); *Kelso v. Tacoma,* 63 Wn.2d 913, 390 P.2d 2 (1964). In *Evangelical United Brethren Church v. State,* 67 Wn.2d 246, 407 P.2d 440 (1965), it was recognized that the statute does contain limitations and that the state is liable only for tortious conduct that would render it liable if it were a private person or corporation. The opinion states at page 253:

> Initially then, it is necessary to determine where, in the area of governmental processes, orthodox tort liability stops and the act of governing begins, for as stated by Mr. Justice Jackson in his dissent in *Dalehite v. United States,* 346 U.S. 15, 97 L. Ed. 1427, 73 Sup. Ct. 956 (1953), "it is not a tort for government to govern." . . . Essentially, the line of demarcation should present a question of law, although in some instances it may well give rise to a mixed question of law and fact.
>
> . . . the legislative, judicial, and purely executive

processes of government, including as well the essential quasi-legislative and quasi-judicial or discretionary acts and decisions within the framework of such processes, cannot and should not, from the standpoint of public policy and the maintenance of the integrity of our system of government, be characterized as tortious however unwise, unpopular, mistaken, or neglectful a particular decision or act might be.

Then the gauge for measuring whether immunity is merited is established by the opinion which suggests that four preliminary questions should be asked:

1. Does the challenged act or omission necessarily involve a basic governmental policy or program?

2. Is the questioned act or omission essential to the realization or accomplishment of that policy or program as opposed to one which would not change the course or direction of the policy or program?

3. Does the act or omission require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved?

4. Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or omit the challenged act or omission?

If these inquiries can all be answered in the affirmative, then the actions so categorized are either discretionary acts or activities which can be omitted at the discretion of the state. If they can be omitted at the state's discretion, then their omission, no matter how negligent, does not subject the state to tort liability.

The rationale was succinctly stated by *Barnum v. State,* 72 Wn.2d 928, 435 P.2d 678 (1967), which made it clear that if the acts or omissions complained of should be characterized as "discretionary" (an act based upon judgment), then the sovereign was still immune from suit. However, if the acts or omissions were "operational" (a ministerial act performed in obedience to instructions without the exercise of judgment), then sovereign immunity could not apply. *See also Friday v. United States,* 239 F.2d 701, 703 (9th Cir. 1957); *Westchester Fire Ins. Co. v. Farrell's Dock & Termi-*

*nal Co.,* 152 F. Supp. 97 (D. Mass. 1957); *Burgdorf v. Funder,* 246 Cal. App. 2d 443, 54 Cal. Rptr. 805 (1966).

The legislature recognized the nature of the problem confronting the division of safety. It legislatively acknowledged that the achievement of absolute safety was to be pursued but could not be required. We find intrinsic to RCW 49.16.010 and 49.16.030 that the division of safety must exercise discretion in performing its part in providing safe working places. RCW 49.16.010 states in part:

> "Safe" and "safety" as applied to an employment or place of work means such freedom from danger to the lives or persons of workmen, as the nature of the case will reasonably permit;

and RCW 49.16.030 reads:

> For the purposes of RCW 49.16.010 through 49.16.150, it shall be the duty of every employer to furnish a place of work which shall be as safe for workmen therein as may be reasonable and practicable under the circumstances, surroundings and conditions, and to furnish and use such safety devices and safeguards and to adopt and use such practices, means, methods, operations and processes as under the circumstances, surroundings and conditions are reasonable and practical in order to render the work and place of work safe, and to comply with such standards of safety of place of work and such safety devices and safeguards and such standards and systems of education for safety as shall be from time to time prescribed for such employer by the director of labor and industries through the division of safety, or by statute, or by the state mining board.

■ ■ In addition, we note that a sovereign state is not liable for the misfeasance, nonfeasance or negligence of its agents "unless it has voluntarily assumed such liability, . . ." *Riddoch v. State,* 68 Wash. 329, 332, 123 P. 450, 42 L.R.A. (n.s.) 251 (1912). It cannot be said that there is any such expression of legislative intent set forth in relation to the statutes involved in these circumstances. *Wegmiller v. State,* 154 Wash. 101, 280 P. 739 (1929), presented the same problem and involved an attempt to hold the state liable when the plaintiff was gored by a bull. The theory of the

plaintiff was that the state had failed to enforce certain laws relative to vicious animals and was liable for his resulting damages. In a per curiam opinion, heretofore neglected and uncited in the milieu of human controversy, the court said it was unable to understand how the state could be civilly liable because a county officer failed to enforce the law. The opinion tacitly recognized that sovereign immunity is abandoned only when the abandonment is expressly stated. Finally, *Nerbun v. State*, 8 Wn. App. 370, 506 P.2d 873 (1973), recently concluded that the safety inspectors performing their duty to inspect under RCW 49.16.050 and 49.16.120 were not negligent as a matter of law when they failed to discover a dangerous condition and that the Department of Labor and Industries did not have an absolute duty to insure a safe place for workmen to be employed. The intent of the legislature in enacting RCW 49.16.050 and 49.16.120 was interpreted as seeking reasonable compliance with the prescribed safety standards rather than placing the safety division in the position of an absolute insurer that the safety standards would be met.

We hold the responsibilities of the safety division of the Department of Labor and Industries and the resources available to the division up to this light and conclude that their performance of safety inspections in the thousands of working places where extrahazardous work is performed is done in the exercise of judgment and discretion. The state is, therefore, immune from tort liability for faulty performance or nonperformance of the activity.

The judgment is affirmed.

HOROWITZ and WILLIAMS, JJ., concur.

Petition for rehearing denied June 27, 1973.

Review denied by Supreme Court August 28, 1973.