[No. 5182-1.   Division One.   October 2, 1978.]

LOREN BERGH, ET AL, *Appellants,* v. THE STATE OF WASHINGTON, ET AL, *Respondents.*

*Victor V. Hoff,* for appellants.

*Slade Gorton, Attorney General,* and *Earl R. McGimpsey, Assistant,* for respondents.

DORE, J.—Plaintiffs are 19 commercial fishermen who were licensed by the State of Washington to take salmon from the waters of Puget Sound during the 1974 commercial salmon season. They sued the State of Washington and its director, Thor C. Tollefson, for damages for unjust enrichment and tortious interference with economic advantage caused by the director in reducing the number of days of coho salmon fishing from 12 to 4 days and eliminating the chum salmon season entirely. The trial judge granted defendants' motion for summary judgment of dismissal. Plaintiffs appeal.

## ISSUES

ISSUE 1: Do commercial fishermen have a cause of action against the State and its director of fisheries for interference with their prospective economic advantage, where fishermen claim state regulations restricting their fishing were issued for a purposé other than conservation?

ISSUE 2: Do commercial fishermen have a cause of action against the State and its director of fisheries for unjust enrichment when the fishermen claim that state regulations restricted their fishing more than was necessary for conservation and that the State, as a result of such restrictive regulations, harvested returning hatchery fish which were far in excess of its hatchery propagation needs?

ISSUE 3: Can commercial fishermen collaterally attack state fishing requirements by way of an action for damages in tort and unjust enrichment when such fishermen had previously unsuccessfully challenged the validity of these regulations in independent actions in superior court under the administrative rule review procedure?

## FACTS

Plaintiffs are all commercial fishermen who were licensed to harvest salmon by gillnets in Puget Sound during the 1974 season. In 1974 the Puget Sound commercial season

was set for 6 days of fishing of coho salmon and no days fishing on chum salmon. According to the director of fisheries the 1974 regulations to reduce the number of days of fishing from the previous year was caused by (1) lower run size, (2) accommodation of Indian treaty fishing rights required by the federal district court, and (3) the record number of commercial fishing rights that had been purchased for the 1974 season. The 6–day coho season was subsequently reduced to 4 days for conservation reasons.

The Puget Sound Gillnetters Association, of which 15 of the 19 appellants were members in 1974, sought a declaratory judgment and injunction against the 1974 commercial gillnet regulations for Puget Sound in Puget Sound Gillnetters Ass'n v. Tollefson, Thurston County cause No. 40757. On August 30, 1974, the Superior Court for Thurston County entered a temporary injunction restraining the director of fisheries from allowing less than 12 fishing days for the taking of coho salmon in the Puget Sound commercial net season pending a final determination by the court but permitting the director to promulgate emergency regulations to adjust fishing time upward or downward for the purpose of conservation.

On September 12, 1974, the federal district court enjoined the director of fisheries from complying with the superior court's temporary injunction and enjoined the Thurston County Superior Court from enforcing its temporary injunction. The director subsequently passed emergency regulations reducing the fishing on coho salmon to the 4 days already fished. The gillnetters association sought to have the director held in contempt and the Thurston County Superior Court issued a show cause order to the director ordering him to show cause why he should not be held in contempt and why plaintiff gillnetters should not be allowed to amend their complaint to state a cause of action for damages. Following the show cause hearing the court ruled that the director was not in contempt of court because (a) his actions were taken in a good faith belief that those actions, including allowing less than 12 fishing

days for the taking of coho salmon in Puget Sound, were required by orders of the Federal District Court of Washington in *United States v. Washington,* 384 F. Supp. 312 (W.D. Wash. 1974), *aff'd,* 520 F.2d 677 (9th Cir.), *cert. denied,* 423 U.S. 1086, 47 L. Ed. 2d 97, 96 S. Ct. 877 (1976), or (b) those actions were taken in the exercise of the emergency powers which the director was specifically allowed to continue to utilize under the terms of the August 30, 1974, order. The Thurston County Superior Court also denied plaintiffs' monetary damages and leave to amend the complaint to plead monetary damages. No appeal was taken on the court's determination of these matters. Subsequently the court, upon a challenge by the same gillnetters association, upheld the department's regulations which had completely closed fishing on chum salmon. The court further found there was no showing that the closure was unrelated to conservation and it found that the department had not acted beyond its statutory authority and its actions were not arbitrary and capricious. No appeal was taken by the gillnetters association from the court's orders of dismissal from either of these lawsuits.

The plaintiffs now challenge the 1974 Puget Sound coho and chum salmon fishing regulations on two theories: (1) tortious interference with a business expectancy; and (2) unjust enrichment. Their chief contention is that the regulations were adopted to comply with an injunction issued by Judge Boldt in *United States v. Washington, supra,* rather than for purposes of conservation. Defendants contend that irrespective of whether or not the 1974 regulations were adopted for conservation purposes or to comply with Judge Boldt's injunction, plaintiffs do not state a cause of action for monetary damages.

Prior to trial the King County Superior Court in this proceeding dismissed the fishermen's complaint, holding that plaintiffs had no claim for monetary damages pursuant to RCW 4.92.090, and that their only remedy was pursuant to the state administrative procedures act, and as the trial court in Thurston County on challenges by these same

fishermen had held that the director of fisheries was acting in his discretionary role and for conservation purposes, the plaintiffs having not appealed those judgments, are prohibited now from collaterally attacking those judgments in a separate proceeding.

## DECISION

ISSUES 1 and 2: Director of fisheries acted in discretionary capacity and State of Washington and director of fisheries are exempted from tort actions.

■ The applicable statute provides:

4.92.090 Tortious conduct of state—Liability for damages. The state of Washington, whether acting in its governmental or proprietary capacity, shall be liable for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation.

To determine the correctness of the trial court's ruling that the Director of Fisheries Tollefson was not liable as a matter of law, it is necessary to examine the case law interpreting RCW 4.92.090.

In *Evangelical United Brethren Church v. State,* 67 Wn.2d 246, 407 P.2d 440 (1965), our Washington State Supreme Court faced the question of whether a discretionary function exception should be integrated judicially upon the broad statutory acceptance of tort liability (RCW 4.92-.090) in a case involving the claims for damages caused by a juvenile who had escaped from a close security correction facility and set fire to a church and house. The plaintiff in that case charged the State with negligence in maintaining an "open program" at the institution assigning the boy to that program and to do work on the boiler room detail.

In *Evangelical United Brethren Church v. State, supra,* our Supreme Court held that the State was exercising a discretionary act and that the State was not liable to private persons for that act regardless of how negligent. The court reasoned at pages 252–55:

There can be no question but that by the enactment of Laws of 1961, ch. 136, § 1 (RCW 4.92.090) the legislature intended to abolish on a broad basis the doctrine of sovereign tort immunity in this state, and we have so held in *Kelso v. Tacoma,* 63 Wn.2d 913, 390 P.2d 2 (1964), and *Hosea v. Seattle,* 64 Wn.2d 678, 393 P.2d 967 (1964).

The statute, however, is not as broad as it possibly could have been written. Although it does not contain the varied exceptions found in the Federal Tort Claims Act (60 Stat. 842 (1946), 28 U.S.C.A. §§ 1346, 1402, 1504, 2110, 2401, 2402, 2411, 2412, 2671, 2680), it does contain limitations. State government is rendered liable for damages only when such damages arise out of "tortious conduct to the same extent as if it were a private person or corporation." Essentially, then, the official conduct giving rise to liability must be *tortious,* and it must be analogous in some degree at least, to the chargeable misconduct and liability of a private person or corporation. Thus, the statute does not render the state liable for every harm that may flow from governmental action, or constitute the state a surety for every governmental enterprise involving an element of risk. Negligent conduct, within accepted tort concepts, must be present.

. . .

Practically all jurisdictions that have broken varying amounts of ground in the abdication of governmental immunity from tort liability have judicially, if not statutorily, recognized that the legislative, judicial, and purely executive processes of government, including as well the essential quasi–legislative and quasi–judicial or discretionary acts and decisions within the framework of such processes, cannot and should not, from the standpoint of public policy and the maintenance of the integrity of our system of government, be characterized as tortious however unwise, unpopular, mistaken, or neglectful a particular decision or act might be. *Dalehite v. United States* [346 U.S. 15, 97 L. Ed. 1427, 73 S. Ct. 956 (1953)], *supra; Hargrove v. Town of Cocoa Beach,* 96 So.2d 130, 60 A.L.R.2d 1193 (Fla. 1957); *Weiss v. Fote,* 7 N.Y.2d 579, 200 N.Y.S.2d 409 (1960); *Muskopf v. Corning Hosp. Dist.,* 55 Cal.2d 211, 11 Cal. Rptr. 89, 359 P.2d 457 (1961); *Lipman v. Brisbane Elementary School Dist.,* 55 Cal.2d 224, 11 Cal. Rptr. 97, 359 P.2d 465 (1961);

*Williams v. Detroit*, 364 Mich. 231, 111 N.W.2d 1 (1961); *Holytz v. Milwaukee*, 17 Wis.2d 26, 115 N.W.2d 618 (1962); *Spanel v. Mounds View School Dist.*, 264 Minn. 279, 118 N.W.2d 795 (1962).

The reason most frequently assigned is that in any organized society there must be room for basic governmental policy decision and the implementation thereof, unhampered by the threat or fear of sovereign tort liability, or, as stated by one writer "Liability cannot be imposed when condemnation of the acts or omissions relied upon *necessarily* brings into question the propriety of governmental objectives or programs or the decision of one who, with the authority to do so, determined that the acts or omissions involved should occur or that the risk which eventuated should be encountered for the advancement of governmental objectives." Peck, The Federal Tort Claims Act, 31 Wash. L. Rev. 207–40 (1956). See also Comment, Abolition of Sovereign Immunity in Washington, 36 Wash. L. Rev. 312 (1961).

. . .

Whatever the suitable characterization or label might be, it would appear that any determination of a line of demarcation between truly discretionary and other executive and administrative processes, so far as susceptibility to potential sovereign tort liability be concerned, would necessitate a posing of at least the following four preliminary questions: (1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision? *If these preliminary questions can be clearly and unequivocally answered in the affirmative, then the challenged act, omission, or decision can, with a reasonable degree of*

*assurance, be classified as a discretionary governmental process and nontortious, regardless of its unwisdom.*
(Italics ours.) *See also* 11 Gonz. L. Rev. 80 (1975) which discusses the meaning of the *Evangelical United Brethren Church v. State, supra.*

In *Loger v. Washington Timber Prods., Inc.,* 8 Wn. App. 921, 509 P.2d 1009 (1973), a workman was injured by a saw in a sawmill because there was no guard or hood over the saw contrary to safety standards in the Washington Administrative Code and, therefore, was in an unreasonably dangerous defective condition. The appellate court upheld the dismissal of the claimant's claim against the State holding the responsibility of the safety division of the Department of Labor and Industries and the resources available to the division up to this light and concluding that their performance of safety inspections in the thousands of working places where extrahazardous work is performed, is done in the exercise of judgment and discretion and, therefore, the State is immune from tort liability for faulty performance or nonperformance of the activity.

In *Loger,* Judge Keith Callow carefully analyzed RCW 4.92.090 and stated at pages 928–31:

We turn to an analysis of RCW 4.92.090 in which the legislature abolished the doctrine of sovereign immunity from tort liability. *See Hosea v. Seattle,* 64 Wn.2d 678, 393 P.2d 967 (1964); *Kelso v. Tacoma,* 63 Wn.2d 913, 390 P.2d 2 (1964). In *Evangelical United Brethren Church v. State,* 67 Wn.2d 246, 407 P.2d 440 (1965), it was recognized that the statute does contain limitations and that the state is liable only for tortious conduct that would render it liable if it were a private person or corporation.

. . .
In addition, we note that a sovereign state is not liable for the misfeasance, nonfeasance or negligence of its agents "unless it has voluntarily assumed such liability . . ." *Riddoch v. State,* 68 Wash. 329, 332, 123 P. 450, 42 L.R.A. (n.s.) 251 (1912). It cannot be said that there is any such expression of legislative intent set forth in relation to the statutes involved in these circumstances. *Wegmiller v. State,* 154 Wash. 101, 280 P. 739 (1929),

presented the same problem and involved an attempt to hold the state liable when the plaintiff was gored by a bull. The theory of the plaintiff was that the state had failed to enforce certain laws relative to vicious animals and was liable for his resulting damages. In a per curiam opinion, heretofore neglected and uncited in the milieu of human controversy, the court said it was unable to understand how the state could be civilly liable because a county officer failed to enforce the law. The opinion tacitly recognized that sovereign immunity is abandoned only when the abandonment is expressly stated. Finally, *Nerbun v. State,* 8 Wn. App. 370, 506 P.2d 873 (1973), recently concluded that the safety inspectors performing their duty to inspect under RCW 49.16.050 and 49.16.120 were not negligent as a matter of law when they failed to discover a dangerous condition and that the Department of Labor and Industries did not have an absolute duty to insure a safe place for workmen to be employed. The intent of the legislature in enacting RCW 49.16.050 and 49.16.120 was interpreted as seeking reasonable compliance with the prescribed safety standards rather than placing the safety division in the position of an absolute insurer that the safety standards would be met.

We hold the responsibilities of the safety division of the Department of Labor and Industries and the resources available to the division up to this light and conclude that their performance of safety inspections in the thousands of working places where extrahazardous work is performed is done in the exercise of judgment and discretion. The state is, therefore, immune from tort liability for faulty performance or nonperformance of the activity.

Thor Tollefson, the former veteran Tacoma Congressman who gained a national reputation on the House Fisheries Committee, was appointed director of fisheries of our state in the twilight of his illustrious career. Fishing is one of the chief industries of our state for it represents thousands of jobs and millions of dollars to our taxpayers.

In 1974 Director Tollefson found himself in the middle of the controversial Boldt decision wherein the federal court had ordered 50 percent of the fishing harvest to the Indians and the remaining 50 percent to everyone else.

Having the responsibility of this arbitrary allocation and not exactly knowing whether his allegiance was to the state or federal courts, the record before us indicates that he sought advice from his staff as to what course of action he should take to preserve the salmon, satisfy court orders and to administer the state fisheries in a manner beneficial to all the people of our state.

The affidavits of record indicate that the department of fisheries is blessed with many dedicated career men, possessing extraordinary knowledge and information concerning our fish. On request of the director, these career professionals put together studies embracing the following information: (a) Puget Sound coho salmon fishing schedules, (b) a preseason prediction of the numbers of fish that would enter Puget Sound less the numbers of fish needed for escapement and for Indian fisheries, the 1974 preseason estimate for a run being approximately 900,000 coho with a total allowable catch of about 550,000, (c) the anticipated number of vessels which would participate in the harvest, and (d) the number of net fishing licenses. The staff believed that the coho run entering Puget Sound would not reach the predicted level of 900,000 fish but that more likely it would range between 600,000 to 700,000.

Based on this information the director made a judgment of discretion limiting the coho and chum seasons. Later when he considered the enlargement of the coho and chum seasons, his staff could not agree and he stood on his original judgment limiting the coho salmon season to 4 days and prohibiting any season in chum salmon.

At all times Tollefson exercised his judgment and discretion after briefings from his staff by personally examining all the possibilities. I believe it is fair to say he acted wisely and for the best interests of all the people; at least he believed so at that time.

We conclude there was no tortious act or acts of the fisheries director or other state employees in the subject case

but simply the exercise of a discretionary act by a conscientious public servant. We hold plaintiffs have no cause of action against the State or its director of fisheries.

ISSUE 3: Collateral estoppel.

Although our resolutions of issues 1 and 2 dispose of this case, we are concerned about successive litigation of the same issues by parties with identical interests. Accordingly, we feel compelled to address the issue of collateral estoppel.

In *King v. Seattle,* 84 Wn.2d 239, 525 P.2d 228 (1974), the court held the City of Seattle was estopped to collaterally attack in a subsequent tort action the unappealed determination of the superior court in an administrative review action which determined that the city's denial of plaintiff's request for a building permit was arbitrary and capricious. The court stated therein at page 243:

> The City's failure to appeal the findings of fact, conclusions of law and judgment in that case collaterally estops them from litigating those issues and is binding on the parties as to those issues in this case. Parties are collaterally estopped by judgment where the facts and issues claimed to be conclusive on the parties in the second action have been actually and necessarily litigated and determined in a prior action. . . . collateral estoppel prevents a second litigation of issues between the same parties even in connection with a different claim or cause of action.

The Thurston County Superior Court previously found that defendant Tollefson's actions in restricting the coho salmon season were due to (1) a good faith belief that those actions, including allowing less than 12 fishing days for the taking of coho salmon in Puget Sound, were required by orders of the Federal District Court of Washington in *United States v. Washington,* 384 F. Supp. 312 (W.D. Wash. 1974), *aff'd,* 520 F.2d 677 (9th Cir.), *cert. denied,* 423 U.S. 1086, 47 L. Ed. 2d 97, 96 S. Ct. 877 (1975), or (2) those actions were taken in exercise of the emergency powers which the director was specifically allowed to continue to utilize under the terms of the August 30, 1974, order. The

court also held that Tollefson's actions in restricting the allowable fishing days during the chum salmon run were for the purpose of conservation.

█ In *Lucas v. Velikanje*, 2 Wn. App. 888, 471 P.2d 103 (1970), we stated at page 894:

Before the doctrine of collateral estoppel can be applied, affirmative answers must be given to the following questions: (1) Was the issue decided in the prior adjudication identical with the one presented in the action in question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? (4) Will the application of the doctrine not work an injustice on the party against whom the doctrine is to be applied?

We find from the record that all four questions, when applied to the subject case, must be answered in the affirmative. Therefore, we hold that the 19 plaintiff fishermen, 15 of whom were members of the gillnetters association and all of whom were licensed for the 1974 salmon fishing in Puget Sound waters, were privity to the Thurston County Superior Court judgments, involving the same parties and same issues, wherein they were adversely ruled against.

Such plaintiffs are now, therefore, prohibited from collaterally attacking these unappealed Thurston County judgments in a subsequent lawsuit.

Affirmed.

WILLIAMS, J., concurs.

ANDERSEN, A.C.J. (concurring in the result)—The plaintiffs are gillnet fishermen. They seek damages from the State and its director of fisheries based on the director's 1974 reduction of non–Indian commercial fishing days for coho salmon in Puget Sound from 12 days to 6 days.

From a review of the record and the statutes empowering the director of fisheries to act, I am satisfied that his actions, concerning which complaint is made, were discretionary governmental actions as a matter of law. It is not a

tort to govern. However unpopular the director's acts may have been in some quarters, they are not actionable in tort. *Evangelical United Brethren Church v. State,* 67 Wn.2d 246, 252–61, 407 P.2d 440 (1965); *Barnum v. State,* 72 Wn.2d 928, 930, 435 P.2d 678 (1967); *Loger v. Washington Timber Prods., Inc.,* 8 Wn. App. 921, 928–30, 509 P.2d 1009 (1973).

On this basis, I concur that the trial court did not err in granting a summary judgment dismissing the plaintiffs' complaint.