[No. 17200-0-I. Division One. March 30, 1987.]

WILLIAM ROBERT NIELSON, *Appellant,* v. WOLFKILL CORPORATION, ET AL, *Respondents.*

*Malcolm Edwards, Charles Wiggins, Howard M. Good-friend, Edwards & Barbieri,* and *Paul Luvera,* for appellant.

354

*David Soderland,* for respondent Wolfkill Corporation.

*Kenneth O. Eikenberry, Attorney General,* and *Michael Tardif, Senior Assistant,* for respondent State.

PEKELIS, J.—Plaintiff William Robert Nielson appeals from orders granting summary judgment in favor of defendants Wolfkill Feed & Fertilizer Corporation and the State of Washington. Nielson argues that his personal injury suit is not barred by the Industrial Insurance Act, and that there was sufficient evidence for the case to go to trial.

I

FACTS

On April 30, 1982, Nielson was unloading chemicals from a railroad car at a fertilizer plant operated by Wolfkill Feed & Fertilizer Corporation. A screw auger pushed the chemicals from an opening under the railroad tracks through a metal trough into a warehouse. Because the auger was prone to jamming, it was typically operated with its cover removed in order to observe the flow of chemicals through the trough. As Nielson was shoveling fertilizer at the edge of the trough, he slipped and fell, catching his foot in the rotating blades of the auger. The auger pulled him into the trough, amputating both legs and an arm.

On two occasions prior to the accident, in 1974 and in April 1981, safety inspectors from the State of Washington's Department of Labor and Industries (DLI) toured the Wolfkill plant. In 1981, according to the plant supervisor, an inspector asked if the workers operated the auger with its cover removed. The plant supervisor told the inspector that "they were not supposed to." An employee who was present during the 1981 inspection could not recall any discussion regarding the auger. During a third inspection shortly after the accident, it was determined that Wolfkill had violated safety regulations by operating the auger without a cover.

Nielson brought suit against Wolfkill,[1] alleging that his injuries were occasioned by the "intentional and malicious conduct" of Wolfkill. Nielson subsequently amended his complaint to add the State as a defendant on the theory that the DLI had failed to adequately inspect the Wolfkill plant. Wolfkill moved for summary judgment, arguing that the suit was barred by the Industrial Insurance Act, RCW 51.04.010 *et seq.* The court granted the motion, finding Wolfkill immune from suit. The State also moved for and was granted summary judgment. Relying on *Coulter v. State*, 93 Wn.2d 205, 608 P.2d 261 (1980) and *Loger v. Washington Timber Prods., Inc.*, 8 Wn. App. 921, 509 P.2d 1009, *review denied*, 82 Wn.2d 1011 (1973), the court concluded that the State was not subject to suit under former RCW 51.24.030 as a "third person not in the same employ" as Nielson.

## II
### SUMMARY JUDGMENT IN FAVOR OF WOLFKILL

The Industrial Insurance Act, RCW 51.04.010 *et seq.*, provides an exclusive remedy for injuries suffered by workers in the course of their employment. With two exceptions, the act abolishes the jurisdiction of the courts over causes of action arising out of such injuries. RCW 51.04.010. The first of these exceptions, RCW 51.24.020, provides for a cause of action by an injured worker against his or her employer if the injury results "from the deliberate intention of [the] employer to produce such injury". Nielson alleged in his complaint that his injury was caused by the "intentional and malicious conduct" of Wolfkill. Thus, he argues, he should be allowed to proceed against Wolfkill under RCW 51.24.020.

■ Washington courts have consistently interpreted the language of RCW 51.24.020 to require a specific intent to injure. *See, e.g., Foster v. Allsop Automatic, Inc.*, 86 Wn.2d

---

[1]The complaint also named Wolfkill Corporation as the parent corporation of Wolfkill Feed & Fertilizer Corporation. Nielson does not assign error to the trial court's dismissal of Wolfkill Corporation.

579, 547 P.2d 856 (1976) and cases cited therein. The required intention relates to the injury, not the act causing it. *Foster,* at 584. Negligence, however gross, is not sufficient to establish a cause of action under RCW 51.24.020, *Delthony v. Standard Furniture Co.,* 119 Wash. 298, 300, 205 P. 379 (1922), nor is a deliberate evasion of recognized safety procedures, *Peterick v. State,* 22 Wn. App. 163, 189, 589 P.2d 250 (1977), *review denied,* 90 Wn.2d 1024 (1978).

Nielson has produced no evidence of a specific intent to injure on the part of Wolfkill. Instead, he asks this court to follow *James v. VIP Dev. Co.,* 15 Ohio St. 3d 90, 472 N.E.2d 1046 (1984), and to reject the specific intent requirement altogether. To do so would require us to overrule a long line of precedent established by our Supreme Court. This we have no authority to do. *See State v. Gore,* 101 Wn.2d 481, 487, 681 P.2d 227 (1984).

### III
#### Summary Judgment in Favor of the State

Nielson also contends that his action against the State for negligent safety inspection is not barred by the Industrial Insurance Act. He argues, first, that such an action is provided for in RCW 51.24.030; second, that barring such an action would deny him his right to the equal protection of the laws; and third, that the State is liable for negligent safety inspection to the same extent that a private person would be liable. We consider each of these arguments in turn.

#### A

Under the second exception to the exclusive remedy provision of RCW 51.04.010, a worker whose injury is due to the negligence or wrong of a "third person not in the same employ" as the worker may elect to seek damages from the third person. RCW 51.24.030(1). Nielson contends that the State is such a third person, and that therefore a private cause of action may be brought against the State under RCW 51.24.030(1) for the negligence of DLI inspectors.

The Supreme Court has previously addressed the issue of

whether DLI inspectors are subject to suit as third persons in *Coulter v. State*, 93 Wn.2d 205, 608 P.2d 261 (1980). In *Coulter*, the court concluded that the Legislature did not intend that DLI inspectors performing their official functions should be liable as third persons under former RCW 51.24.010,[2] which has since been repealed and replaced by RCW 51.24.030. *Coulter*, at 208. Nielson argues that the rationale of *Coulter* is inapplicable to the new statute, or, in the alternative, that *Coulter* was wrongly decided and should be overruled.

Under former RCW 51.24.010, an injured worker could elect either to take benefits under the act or to sue the third person. If the worker elected not to sue, then his cause of action against the third person was assigned to the DLI or, in the case of a self–insured employer, to the self–insurer. If, on the other hand, the worker elected to sue the third person, then the DLI or the self–insurer, as the case may be, would make up any deficiency between the amount recovered from the third person and the amount of benefits the worker would have received had he elected not to sue. The worker would receive benefits initially even if he did elect to sue, but the insurer would have a lien against his recovery for the amount of benefits paid.

The *Coulter* court pointed out that if the injured worker were allowed to treat the DLI as a third person under former RCW 51.24.010, then the cause of action would be assigned to the DLI if the worker elected not to sue. In such a case, "the department would sue itself, thus becoming both plaintiff and defendant". *Coulter*, at 208. The court concluded that the Legislature could not have intended to create such an "anomalous result", and that it therefore must not have intended to include the DLI as a third person under former RCW 51.24.010.[3] *Coulter*, at

---

[2]Laws of 1973, 1st Ex. Sess., ch. 154, § 93.

[3]*Coulter* does not acknowledge that under former RCW 51.24.010 the DLI would never be *obliged* to sue itself. The statute provides that "[a]ny such cause

208.

■ Under RCW 51.24.030, as under former RCW 51.24-.010, an injured worker may still elect to seek damages from a third person not in the same employ. As under the old statute, if the worker elects not to sue, then his cause of action is assigned to the DLI or to the self–insurer. RCW 51.24.050(1). The principal innovations of the new statutory scheme concern the manner in which any damages recovered by either the worker or the insurer shall be distributed between them. *See* RCW 51.24.050(4), (5), .060(1). However, these changes have no bearing on the issues with which *Coulter* was concerned. The same "anomalous result" which troubled the court in *Coulter* is just as theoretically possible under the new statute. For if RCW 51.24.030(1) were interpreted to allow the worker a cause of action against the DLI as a third person, then RCW 51.24.050(1) would permit that same cause of action to be assigned to the DLI. Thus, the rationale of *Coulter* applies with equal force to the new statute.

Nielson argues in the alternative that *Coulter* was wrongly decided and should be overruled. Whatever merits his arguments may have, this court is without authority to overrule a decision of the Supreme Court. *See State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227 (1984).

### B

■■ Nielson next contends that even if RCW 51.24-.030 was correctly interpreted by the trial court, that interpretation is unconstitutional because it denies him his right to the equal protection of the laws. A 3–part test is used to determine whether a statute such as this one, which involves neither a suspect classification nor a fundamental

---

of action assigned to the department . . . may be prosecuted . . . by the department . . . *in its discretion*". (Italics ours.) Thus, the "anomalous result" foreseen in *Coulter* need never, and in all probability would never, occur. Furthermore, a suit against the DLI, if it were permitted, would not be pointless from the point of view of the worker. It would, in fact, afford him the possibility of receiving more, but never less, than the amount of compensation provided by the act.

right, satisfies the requirements of constitutional equal protection. First, any classification created by the statute must apply alike to all members of the designated class. Second, there must be some basis in reality for distinguishing those within the class from those outside it. Third, the classification must bear a rational relation to the purpose of the statute. *Myrick v. Board of Pierce Cy. Comm'rs,* 102 Wn.2d 698, 701, 677 P.2d 140, 687 P.2d 1152 (1984).

Nielson argues first that the statute, as interpreted by the trial court, creates an irrational distinction between workers such as himself, who are covered by the state fund, and workers who are covered by self–insurers. The latter, he contends, would be permitted to sue the State for negligent inspection because the rationale of *Coulter* does not apply to them. For if such a worker elects not to proceed against the DLI, then his cause of action is assigned to the self–insurer, not to the DLI. The self–insurer could then proceed against the DLI without creating the "anomalous result" foreseen in *Coulter.*

However, there is another rationale for the decision in *Coulter* which applies with equal force to both classes of workers. In *Coulter,* the court cited with approval *Loger v. Washington Timber Prods. Inc.,* 8 Wn. App. 921, 509 P.2d 1009, *review denied,* 82 Wn.2d 1011 (1973), which also held that the State was not liable for negligent safety inspection as a third party under former RCW 51.24.010. In *Loger* the court reasoned that because the functions of the State in the area of industrial insurance were enumerated by statute, and because a private cause of action against the State as a third party had not been expressly provided by the act, the Legislature must have intended that there should be no such cause of action. *Loger,* at 927–28. We believe *Coulter* adopts this analysis and makes no distinction, irrational or otherwise, between workers covered by the State fund and workers covered by self–insurers: neither has a cause of action against the State for the negligence of DLI inspectors.

Second, Nielson argues that the trial court's interpreta-

tion of RCW 51.24.030 creates an irrational distinction between workers covered by the state fund and persons excluded from coverage altogether under the Industrial Insurance Act. *See* RCW 51.12.020. Since they are not covered by the act, the latter would not be barred by the act from bringing suit against the State for negligent inspection. However, there is a readily discernible basis for distinguishing the two classes: those in the former class are eligible for benefits under the act, while those in the latter class are not. The classification bears a rational relation to the purpose of the act by promoting the exclusive remedy provision thereof. *See* former RCW 51.24.010. Consequently, there is no equal protection violation. *See Myrick*, at 701.

Third, Nielson argues, relying on *Hunter v. North Mason High Sch.*, 85 Wn.2d 810, 539 P.2d 845 (1975), that because victims of private third party tortfeasors would have a cause of action under RCW 51.24.030, the statute creates an irrational distinction between those victims and the victims of negligent DLI inspectors. However, the State's participation in a comprehensive system of industrial insurance provides a clear basis for distinguishing it from the private third party tortfeasor. Moreover, once again, the classification bears a rational relation to the purpose of the Industrial Insurance Act by promoting the exclusive remedy provision of the act. *See* former RCW 51.24.010. The statute therefore does not violate Nielson's right to the equal protection of the laws. *See Myrick*, at 701.

C

■■ Finally, Nielson contends that because a private party may be held liable for negligent safety inspection, the State may be held liable as well. He relies on the broad language of RCW 4.92.090, which provides that the State "shall be liable for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation." He fails to recognize, however, that this general waiver of sovereign immunity does not prevent the

State from withdrawing certain actions from private controversy. RCW 4.92.090 is general in nature, while the Industrial Insurance Act is special. Where general and special acts are in conflict, the special act will be considered an exception to the general act. *See, e.g., Wark v. Washington Nat'l Guard,* 87 Wn.2d 864, 867, 557 P.2d 844 (1976). Because the Industrial Insurance Act provides an exclusive remedy for workers injured in the course of their employment, which does not provide for a private cause of action against the State, it must be read as an exception to the more general provision of RCW 4.92.090. *See Wark,* at 867–68.

## IV
### CONCLUSION

In conclusion, we hold that Nielson's suit against Wolfkill and against the State is barred by the Industrial Insurance Act. Consequently the trial court's judgment is affirmed.

SCHOLFIELD, C.J., and RINGOLD, J., concur.

Reconsideration denied July 15, 1987.

Review denied by Supreme Court November 3, 1987.