## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| TRACY S. MCNAMARA, an individual, | ) | No. 77157-4-I |
| | ) | |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| KAREN KOEHLER; AKA "THE VELVET | ) | |
| HAMMER;" JOHN DOE KOEHLER; | ) | |
| JOHN DOE "HAMMER"; | ) | |
| STRITMATTER KESSLER WHELAN | ) | |
| KOEHLER MOORE KAHLER, a | ) | UNPUBLISHED OPINION |
| Washington professional corporation, | ) | |
| | ) | |
| Respondents. | ) | FILED: August 6, 2018 |
| | ) | |

MANN, A.C.J. — The fair report privilege is a conditional privilege that protects from liability for defamation a republisher of a statement made in the course of an official public proceeding, including judicial proceedings. Tracy McNamara appeals a trial court order dismissing her defamation and Consumer Protection Act (CPA)[1] claims against attorneys Karen Koehler and Stritmatter Kessler Whelan Koehler Moore and Kahler (collectively SKW). McNamara alleged that SKW defamed her by posting false information on SKW's website about a pending wrongful death action that SKW filed against McNamara. Because the fair report privilege protects the statements made on

---

[1] Ch. 19.86 RCW.

the SKW website and McNamara failed to demonstrate a violation of the CPA, we affirm.

## FACTS

Karen Koehler, a partner at SKW, represents Jennifer Ralston and Caleb McNamara in a wrongful death lawsuit against Tracy McNamara for the alleged murder of Ralston and Caleb McNamara's father, Timothy McNamara. The complaint alleged that McNamara financially exploited and then murdered Timothy McNamara, her biological uncle, on December 25, 2014, in Belize.

SKW maintains a webpage dedicated to the Ralston v. Nessl, a.k.a. McNamara wrongful death lawsuit on the firm's website. This page features a picture of McNamara above the words "INTERPOL WARRANT." Next to the picture is a statement that Tracy Shannon Nessl [McNamara] "is wanted by the judicial authorities of Belize for prosecution to serve a sentence."[2] Beneath the picture of McNamara the webpage states, "Murder & incest in Belize with ties to WA State: Defendant Tracy Nessl a.k.a. McNamara is a Grant County resident with a warrant out for her arrest/prosecution."

SKW's website also includes a webpage titled "Sample Cases." After describing the firm's personal injury and wrongful death practice, the page states "Below is a small sample of just a few of our over 150 cases resulting in at least seven and eight figures for our clients." The page then provides a summary of SKW's ongoing litigation on behalf of plaintiffs involved in the 2015 Ride the Ducks crash on Aurora Avenue, links to several settled injury actions, and then two ongoing wrongful death actions including the

---

[2] The webpage refers to McNamara by her prior name, Tracy Shannon Nessl. The parties refer to appellant as Tracy McNamara. We also refer to the appellant as McNamara.

action against McNamara.[3] Following that are multiple pages containing description of cases handled by SKW lawyers; some list settlement amounts and some do not.

In July 2016, McNamara sued Koehler and SKW for defamation and for violating the CPA. The complaint alleged that SKW's website was defamatory due to false statements about McNamara. The complaint identified the following false statements: (1) An Interpol Warrant exists for McNamara's arrest, (2) McNamara has been found guilty of murder, (3) McNamara had been found guilty of Incest, (4) SKW is responsible for obtaining at least a $10 million dollar settlement for its clients against McNamara, and (5) that Tim McNamara's assets at the time of his death included assets owned by McNamara.

SKW moved to dismiss McNamara's complaint under CR 12(c). SKW asserted that the information on the website was absolutely privileged under the litigation privilege and conditionally privileged under the fair report privilege, and that McNamara's CPA claim failed as a matter of law. Because the pleadings included multiple attachments, the trial court converted the CR 12(b) motion to a motion for summary judgment. The trial court granted summary judgment in favor of SKW and dismissed McNamara's case with prejudice.[4]

---

[3] The page states:
The wrongful death case involves an alleged murder of Mr. McNamara by Defendant Tracy Nessl (a.k.a. Tracy McNamara). The motive is believed to include Ms. McNamara's wish to acquire Mr. McNamara's financial assets. These assets included the family farm, property in North Carolina and a bed and breakfast estate in Belize. Jennifer Ralston, the adult daughter of the decedent (Timothy Patrick McNamara) and Caleb McNamara are Plaintiffs in this wrongful death case.
[4] At the time of the trial court's ruling, the underlying wrongful death action against McNamara remained pending.

McNamara sought direct review by the Washington Supreme Court under RAP 4.2(a)(4). The Supreme Court transferred the case to this court.

## ANALYSIS

### *Conversion to Summary Judgment*

As a preliminary matter, McNamara claims that the trial court erred by converting the CR 12(b)(6) motion to dismiss into a CR 56 motion for summary judgment. We disagree.

Where a court hearing a motion for judgment on the pleadings considers matters outside of the pleadings, then that motion must be treated as a summary judgment motion. CR 12(c). McNamara recognized the trial court's duty under CR 12(c) and in its opposition to the motion to dismiss, asked that the trial court either strike the attachments to SKW's motion or convert the motion into a motion for summary judgment. This is precisely what the trial court did. As the court explained, the "motion contains a great deal of evidence, and therefore the Court converts the Motion into one for summary judgment under CR 56. All submitted evidence is admitted and was considered."

While McNamara argues on appeal that she should have been afforded additional time and an opportunity to present additional materials under CR 12(c), she ignores that the parties stipulated to a briefing schedule on the motion to dismiss that allowed more time for the response and reply briefs than ordinarily allowed under CR 56(c).[5] Moreover, McNamara fails to identify any additional evidence that would have

---

[5] CR 56(c) ordinarily allows a party responding to a motion for summary judgment 17 days to file a response followed by 6 days for the moving party to file a reply. The parties here stipulated to a briefing schedule that provided McNamara 20 days to file a response brief and 7 days for SKW to file its reply.

been relevant to the court's consideration beyond the wrongful death complaint, the SKW website, and McNamara's complaint—all of which were before the trial court and attached to McNamara's appellate brief. Where, as here, there is no dispute of the underlying facts, and the questions presented are question of law, "[c]ompliance with the formalities of CR 56 was not necessary." Loger v. Washington Timber Prods, 8 Wn. App. 921, 926, 509 P.2d 1009 (1973). This matter is properly considered under CR 56.

Summary judgment is proper if the pleadings, depositions, and answers on file show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). The moving party bears the burden of showing that there is no genuine dispute of material fact. Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). All reasonable inferences from the evidence are resolved against the moving party. Folsom, 135 Wn.2d at 663.

In a defamation action, summary judgment serves as an early test of the plaintiff's evidence. Mark v. Seattle Times, 96 Wn.2d 473, 486-87, 635 P.2d 1081 (1981). To defeat a defendant's motion for summary judgment, the plaintiff "must establish a prima facie case by evidence of convincing clarity." Mark, 96 Wn.2d at 487.

### Defamation

A defamation plaintiff must establish four elements: falsity, damages, fault, and an unprivileged communication. Mark, 96 Wn.2d at 486 (citing RESTATEMENT (SECOND) OF TORTS § 558 (1977)). There are absolute and conditional privileges that may shield a "defendant from liability for uttering an otherwise defamatory statement." Alpine Indus Computers, Inc. v. Cowles Publ'g Co., 114 Wn. App. 371, 381, 57 P.3d 1178 (2002). An absolute privilege absolves the defendant from all liability for defamatory statements.

A conditional or qualified privilege "may be lost if it can be shown that the privilege has been abused." Bender v. City of Seattle, 99 Wn.2d 582, 600, 664 P.2d 492 (1983).

1.    The Fair Report Privilege[6]

Washington recognizes the fair report privilege—a conditional privilege that protects a republisher of a statement "when the original defamatory statement was made in the course of an official public proceeding or contained in an official public record." Herron v. Tribune Publ'g Co., 108 Wn.2d 162, 179, 736 P.2d 249 (1987). The purpose of the fair report privilege "is to serve the public's interest 'in having information made available to it as to what occurs in official proceedings and public meetings.'" Herron, 108 Wn.2d at 179 (quoting RESTATEMENT (SECOND) OF TORTS § 611). The fair report privilege extends to both civil and criminal judicial proceedings. Herron, 109 Wn.2d at 179. "Because the filing of a pleading is a public and official act in the course of judicial proceedings, the fair reporting privilege attaches to pleadings even if the court has yet to act on them." Clapp v. Olympic View Publ'g Co., 137 Wn. App. 470, 476, 154 P.3d 230 (2007). See also WASH. CONST. art. I, § 10 ("Justice in all cases shall be administered openly, and without unnecessary delay.").

The fair report privilege protects the reporting of official proceedings if (1) the report is attributable to an official proceeding and (2) the report is an accurate or a fair abridgement. Clapp, 137 Wn. App. at 477. See also Herron, 108 Wn.2d at 179; Mark,

---

[6] SKW argued below that the statements contained on its website are privileged under both the litigation privilege and the fair report privilege. Because the fair report privilege is dispositive, we do not address the litigation privilege.

96 Wn.2d at 487; Alpine, 114 Wn. App. at 383; (all quoting RESTATEMENT (SECOND) OF TORTS § 611).

2.    Application to SKW's Webpages

McNamara contends first that SKW cannot invoke the fair report privilege because it only applies to members of the news media. We disagree.

Washington courts have not expressly decided whether the fair report privilege is applicable to parties other than traditional news media. However, as we discuss above, Washington has long recognized a strong public interest in having access to public proceedings, including a constitutional mandate for the open administration of justice. As such, neither the type of media nor entity republishing reports of official public proceedings is relevant to determining whether the fair report privilege applies. We hold that the fair report privilege applies to news media and other types of media, including websites, webpages, and blogs, reporting on official public proceedings, including judicial proceedings, so long as (1) the report is attributable to an official proceeding and (2) the report is an accurate or a fair abridgement of the official report.[7]

McNamara argues next that SKW may not invoke the fair report privilege because SKW's website and webpages are not an accurate or fair abridgment of plaintiff's complaint in the wrongful death action against McNamara. We disagree.

---

[7] McNamara argues that under comment C to RESTATEMENT (SECOND) OF TORTS § 611, a party may not rely on the fair report privilege by making the original defamatory publication himself and then reporting what was stated in the original publication. Consequently, McNamara contends, because SKW prepared the underlying complaint in the wrongful death action SKW cannot invoke the fair report privilege to protect republication of information in the complaint on its website. We disagree. While Washington courts have followed RESTATEMENT (SECOND) OF TORTS § 611, we have not adopted the self-reporting exception in comment C. We decline to do so here.

"For a report to be a fair abridgment of an official proceeding, surgical precision is not required so long as the report is substantially accurate and fair." Alpine, 114 Wn. App. at 386. "In the summary judgment context, the plaintiff will not overcome the fair reporting privilege if the reviewing court determines as a matter of law that the challenged report is a fair abridgment." Alpine, 114 Wn. App. at 386. We address each of the false statements alleged by McNamara in her complaint.

McNamara's complaint alleged that the statement "Interpol Warrant Issued" on the SKW webpage was false. While it is not precisely accurate that an "Interpol warrant" was issued, the statement on the website is a fair abridgment of the allegations in the complaint that "[s]ince Defendant's return to Washington, Belize authorities have issued a warrant for Defendant's arrest on the charge of murdering Mr. McNamara, Attachment 4 is Interpol's posting regarding Defendant's warrant for murder."[8]

McNamara's complaint next alleged that the statement "Ms. McNamara has been found guilty of Incest" on SKW's website is false. This allegation fails because the SKW webpages in the record do not state that McNamara was found guilty of incest. The only statement concerning incest is the sentence beneath McNamara' photo "Murder & incest with ties to WA State: Defendant Tracy Nassl a.k.a. McNamara is a Grant County resident with a warrant out for her arrest/prosecution." In her briefing, McNamara asserts that SKW lied by claiming that McNamara was wanted not only for murder but for incest. While it was not surgically precise to state that McNamara was wanted for incest, the statement is a fair abridgment of the allegation in the complaint that

---

[8] Attachment 4 to the wrongful death complaint is a copy of an Interpol notice containing the same photo of McNamara used on SKW's webpage and identifying that Tracy Shannon Nessl is "wanted by the judicial authorities of Belize for prosecution/to serve a sentence" on the charge of murder.

"[McNamara], a waitress and the natural daughter of Mr. McNamara's brother, began spending time with Mr. McNamara. The two ultimately entered into a romantic relationship."[9]

McNamara's complaint next alleged that the statement "Ms. McNamara has been found guilty of Murder" on SKW's webpage is false. Again, this allegation fails because the SKW webpages in the record do not state that McNamara was found guilty of murder. The webpages state only that McNamara was wanted for arrest and prosecution for murder. In her briefing, McNamara asserts that SKW lied by claiming McNamara was <u>wanted</u> for murder. This statement is an accurate or fair abridgment of the complaint. The complaint alleges that Belize officials had issued a warrant for McNamara's arrest for murder and includes a copy of the Interpol notice that identifies the charge as murder.

McNamara's complaint next alleged that the statement on SKW's website that it had obtained at least a $10 million settlement against McNamara was false. Once again, the SKW webpages in the record do not make this statement. McNamara's brief alleges that SKW's inclusion of its wrongful death action against her within the webpage identifying "successful verdicts and settlements" was false. We disagree. While the SKW webpage does contain a statement that cases identified are a sample of SKW's successes, the featured and first case highlighted was the "Ride the Ducks" case which,

---

[9] "Incest" means "[s]exual relations between family members or close relatives" and "[i]ntermarriage between persons related in any degree of consanguinity or affinity within which marriage is prohibited—for example, through the uncle-niece or aunt-nephew relationship." Incest, BLACK'S LAW DICTIONARY 879 (10th ed. 2014). See also RCW 9A.64.020(2)(a) ("A person is guilty of incest . . . if he or she engages in sexual contact with a person whom he or she knows to be related to him or her, either legitimately or illegitimately, as an ancestor, descendant, brother, or sister of either the whole or the half blood.").

as is clear from the site, far from settled and there is no mention of a verdict or settlement. This is true for at least one of case in addition to case involving McNamara. The description of the wrongful death proceedings is a fair and accurate account of the complaint.

Finally, while not identified in the complaint, McNamara's brief challenges SKW's statement on its webpage that the motive for murder was her desire to acquire her uncle's property. These properties, she claims, were transferred to her in 2012, years before his death. The statement on SKW's website is substantially accurate and fair abridgment of the complaint. The complaint stated that (1) McNamara's motive for murder was the "acquisition of [Timothy McNamara's] financial assets"; (2) she "enticed [Timothy McNamara] into gifting three properties to her by quitclaim deed, including the family farm"; (3) she enticed [Timothy McNamara] to pay for her debts and expenses related to her ownership interest in a piece of property located in [North Carolina]"; and (4) she "enticed [Timothy McNamara] to purchase real property in Belize to operate a bed and breakfast."

In summary, we agree with the trial court that the statements made on SKW's website are accurate or a fair abridgment of the wrongful death complaint filed against McNamara. Consequently the statements on SKW's website are protected by the fair report privilege. Summary judgment and dismissal of McNamara's defamation claims was appropriate.

*Consumer Protection Act*

Under the CPA, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful." RCW 19.86.020.

-10-

To establish a CPA claim, McNamara was required to show (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) that impacts the public interest, and (4) and causes injury to the plaintiff's business or property. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co, 105 Wn.2d 778, 780, 719 P.2d 531 (1986). Certain "entrepreneurial aspects of the practice of law may fall within the 'trade or commerce' definition of the CPA," such as "the way a law firm obtains, retains, and dismisses clients." Short v. Demopolis, 103 Wn.2d 52, 60-61, 691 P.2d 163 (1984).

McNamara's complaint does not identify the unfair or deceptive acts or practices of SKW's business result in the violation of the CPA. In her opposition to SKW's motion to dismiss, however, McNamara asserts that SKW's false and deceptive website advertising violates the CPA. As discussed above, the statements on SKW's website are an accurate and a fair abridgment of plaintiff's complaint and protected by the fair report privilege. Consequently, McNamara cannot demonstrate that the statements constitute an unfair or deceptive act. Because McNamara failed to demonstrate SKW's unfair or deceptive acts, her claim under the CPA fails and dismissal was appropriate.

Affirmed.

_Mann, ACJ_____

WE CONCUR:

_Leach, J._____          _Pelicuello, J_____

-11-